Michigan Supreme Court
Lansing, Michigan 48909

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 14, 2003**

STATE TREASURER,

    Plaintiff-Appellant,

v                            No. 120803

THOMAS K. ABBOTT,

    Defendant-Appellee,

and

AUTO BODY CREDIT UNION and JOANN
A. ABBOTT,

    Defendants.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, C.J.

    We granted leave to appeal to consider whether an order reimbursing the state for the cost of caring for defendant, a prison inmate, violates the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.* The trial court ordered defendant to receive his pension benefits at his

prison address and directed the warden to appropriate the funds from defendant's prison account under the State Correctional Facility Reimbursement Act (SCFRA), MCL 800.401 *et seq.* The Court of Appeals reversed because subsection 1056(d)(1) of ERISA prohibits an assignment or alienation of pension benefits.

We hold that the trial court's order did not violate the federal statute. An order requiring a prisoner to receive his pension benefits at his current address is not an assignment or alienation of those benefits. Moreover, once the funds are in the inmate's account, the warden may distribute them under the SCFRA. The federal ban on alienation or assignment of pension funds does not extend to benefits that the pensioner has already received. We thus reverse the judgment of the Court of Appeals and reinstate the trial court's judgment.

## I. Factual background and procedural posture

The State Treasurer filed a complaint under the SCFRA seeking to recover the costs of confining defendant Thomas K. Abbott,[1] a prisoner under the jurisdiction of the Michigan Department of Corrections. Plaintiff submitted documentation of the costs it has incurred and expects to incur in caring

---

[1]We will refer to Thomas Abbott as "defendant." The other defendants in this case are not involved in this appeal.

for defendant during his incarceration.[2]  Plaintiff argued that defendant's monthly pension payments should be sent to his prison address, deposited in his prison account, and appropriated by the warden.  The trial court ordered defendant to show cause why the funds should not be appropriated.  Defendant filed a responsive pleading.

After reviewing the pleadings, the trial court ordered defendant to direct his monthly pension proceeds to his prison address.  The court further ordered the warden to provide $20 of each payment to defendant, with the remainder divided between defendant's wife (sixty-seven percent) and the state (thirty-three percent).  In addition, the court ordered the pension plan to send the benefit payments to defendant's "new address of record" in prison in the event that defendant failed to direct the plan to do so.

Defendant subsequently filed a pleading entitled a "writ of mandamus."  The trial court treated the "writ of mandamus" as a motion for reconsideration and denied it.  Defendant filed a delayed application for leave to appeal, which the Court of Appeals denied for lack of merit in the grounds

---

[2]The documentation reflects that the state expects to incur approximately $479,490 in caring for defendant during his incarceration.  Defendant began serving his sentence in 1996.  His earliest possible release date is in 2015.

presented.[3]  Defendant then applied for leave to appeal to this Court.  In lieu of granting leave to appeal, we remanded the case to the Court of Appeals for consideration as on leave granted.[4]  In a published opinion, the Court of Appeals held that ERISA barred the deposit of funds into defendant's prison account.[5]  Plaintiff filed an application for leave to appeal to this Court, which we granted.[6]

## II. The Court of Appeals opinion

In concluding that the trial court's order violates ERISA's antialienation provision, the Court of Appeals relied on *State Treasurer v Baugh*, 986 F Supp 1074 (ED Mich, 1997). In *Baugh*, the State Treasurer sought an order under the SCFRA directing a pension plan to deposit benefits into an inmate-beneficiary's prison account.  The federal district court held that ERISA preempted such an order:

> The Court agrees that once pension benefits are placed in a personal account, ERISA no longer operates to protect those funds.  However, in the instant case, defendant Chrysler Corp. would not be voluntarily depositing the pension funds into [the inmate's] personal prisoner account but would be doing so only by court order.  Such an involuntary transfer clearly constitutes an assignment. [*Id.* at

---

[3]Unpublished order, entered December 4, 1998 (Docket No. 209836).

[4]461 Mich 911 (1999).

[5]249 Mich App 107; 640 NW2d 888 (2001).

[6]466 Mich 860 (2002).

1077 (citation deleted).]

The Court of Appeals followed *Baugh*:

> There is no dispute that directly garnishing defendant's pension benefits to reimburse the state would violate the ERISA's antialienation provision. *Baugh, supra.* Plaintiff attempts to distinguish *Baugh* by asserting that plaintiff did not make a claim against the pension plan in this case and did not seek an order compelling the plan to do anything. Plaintiff argues that ordering defendant to direct his pension to be sent to his prison address is consistent with *Baugh* and does not violate the ERISA. This argument fails for two reasons. First, defendant did not voluntarily change his pension address to his prison address and did not voluntarily have the pension funds deposited into his personal prisoner account, but rather was ordered by the court to do so. The court's order effectively required the pension fund to make the pension payment to defendant's prison account against defendant's will. Such an involuntary transfer clearly constitutes an assignment and conflicts with the ERISA's antialienation provision. Second, if defendant refuses to direct the pension fund to pay the benefits to his prison account, the only method of ensuring that the benefits reach the prison account is by reliance on the order directing the fund to send the money to the prison, just as in *Baugh*. [249 Mich App 107, 113; 640 NW2d 888 (2001).]

### III. Standard of review

Whether the trial court's order effectuates an alienation or assignment of pension funds under 29 USC 1056(d)(1) is a question of law. We review questions of law de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

### IV. Principles of interpretation

This case requires us to interpret a federal statutory

5

provision. Where a federal statute clearly addresses the issue at hand, we apply the statute as written. If, however, the text is silent or ambiguous regarding the issue before the Court, we must defer to a federal agency's interpretation if it is based on a permissible construction of the statute. *Chevron USA Inc v Natural Resources Defense Council, Inc*, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984).

## V. Discussion

The trial court's order requires that (1) defendant receive his monthly pension payments at his prison address and (2) the warden distribute the funds after their deposit in defendant's prison account. We conclude that this arrangement does not alienate or assign the pension proceeds in violation of ERISA.

We note initially that the SCFRA permits the trial court to provide reimbursement to the state from "assets" owned by a prisoner for expenses incurred in caring for the prisoner. MCL 800.404(3). The statute defines "assets" to include "income or payments to such prisoner from . . . pension benefits . . . ." MCL 800.401a.

It is not disputed that the trial court's order was proper under the SCFRA. The question presented is whether ERISA's prohibition on assignment and alienation of pension benefits supersedes the SCFRA in this case.

6

A. Receipt of the funds at defendant's prison address

ERISA's antialienation provision states: "Each plan shall provide that benefits provided under the plan may not be assigned or alienated."  29 USC 1056(d)(1).[7]  To determine whether the order requiring defendant to receive pension benefits at his prison address alienates or assigns those benefits, we must discern the meanings of the statutory terms.

ERISA does not define the terms "alienate" and "assign." Because the federal statute is silent on the question presented, we defer to a federal agency's definition. *Chevron*, *supra*.  The Treasury Department has defined the term "assignment" as "[a]ny direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary."  26 CFR 1.401(a)-13(c)(1).  This definition plainly contemplates a transfer of the interest to *another person, i.e., a person other than the beneficiary himself*. Sending a pension payment to a beneficiary at *his own address*, and *depositing it in his own account,* does not assign that payment.  Neither the warden nor any other third person

---

[7]It is not disputed that defendant's pension plan is covered by ERISA.

acquires a right or interest enforceable against the plan when the pension proceeds are sent to defendant at his current address.[8]

---

[8]Moreover, we note that the accepted legal meanings of the terms "assignment" and "alienation" are consistent with the Treasury Department definition of "assignment." Black's Law Dictionary (6th ed) defines "assignment" as:

> The act of transferring *to another* all or part of one's property, interest, or rights. A transfer or making over *to another* of the whole of any property, real or personal, in possession or in action, or of any estate or right therein. It includes transfers of all kinds of property, including negotiable instruments. [Emphasis added; citation omitted.]

See also *Allardyce v Dart*, 291 Mich 642, 644-645; 289 NW 281 (1939):

> In 4 Am Jur, p 229, an assignment in law is defined as "A transfer or setting over of property, or some right or interest therein, *from one person to another*, and unless in some way qualified, it is properly the transfer of one's whole interest in an estate, or chattel, or other thing. It is the act by which *one person transfers to another*, *or causes to vest in another, his right of property or interest therein.*"

> The American Law Institute has defined an assignment of a right in its Restatement of the Law of Contracts, p 171, § 149(1), as "[a] manifestation *to another person* by the owner of the right indicating his intention *to transfer*, without further action or manifestation of intention, *the right to such other person or to a third person.*"

> This court has defined the word "assignment" in the language of Webster as meaning "*to transfer or make over to another;*" and in the language of Burrill's Law Dictionary as "*to make over or set over to another; to transfer.*" *Aultman, Miller & Co v Sloan*, 115 Mich 151, 153 [73 NW 123 (1897)].

A property interest is assigned or alienated when it has been transferred *to another person*.  The trial court here did not order defendant to have his pension proceeds sent to *another person's* address.  On the contrary, the court ordered defendant to receive the benefits *at his own address*.  Moreover, the deposit of the funds into defendant's prison account did not transfer any legal title to, or interest in, the funds to another person.  The warden's access to defendant's account does not alter the fact that the account is in defendant's name.  Legal title was not conveyed to the warden or to any other person when the funds were deposited in defendant's account.[9]

We respectfully decline to follow the federal district court's opinion in *Baugh*.  The *Baugh* court held that "an order by this Court forcing [a pension plan] to deposit pension

_____

[Emphasis added.]

The term "alienation" similarly refers to a "conveyance or transfer of property *to another*."  Black's Law Dictionary (7th ed) (emphasis added).

[9] The dissent asserts that the warden obtains a property interest in the funds before depositing them in defendant's prison account.  The trial court's order, however, *compels* the warden to deposit the funds in defendant's prison account, thus ensuring that defendant receives the funds before they are distributed under the SCFRA.  The warden essentially acts as a bank teller—he *must* deposit the funds in defendant's account upon receipt.  Thus, the warden does not obtain any interest in, or title to, the pension funds before depositing them in defendant's account and has no discretion or right to use the funds.

9

funds into an [inmate's prison] account from which [the state] may withdraw monies clearly operates as an assignment." *Baugh*, *supra* at 1077. The *Baugh* court characterized the transfer of the funds to the inmate's prison account as an assignment because it was "involuntary." The involuntary nature of a deposit does not establish an assignment unless a person other than the beneficiary acquires a right or interest enforceable against the plan. An assignment does not occur where the pension proceeds are sent to the pensioner's current address and deposited into his own account.

The dissent argues that an assignment or alienation occurred because the pension fund itself was directed to send the benefit payments to defendant's prison address in the event that defendant did not ask the fund to do so. The dissent's argument ignores the Treasury Department's definition of the term "assignment." The federal statute would be violated if the court had ordered the fund to send the payments *to another person, i.e., to a person other than defendant*, and thereby granted a right or interest enforceable against the plan to that third person. Thus, if the court had ordered the pension fund to distribute the payments directly to the state of Michigan, an assignment or alienation would result. Here, however, the court ordered the funds to be sent *to defendant himself at his current address and deposited in*

10

*his own account.*  Because defendant thus receives the funds, no assignment or alienation occurs.[10]

---

[10]The dissent observes that the trial court's order refers to the warden as a "receiver."  This language in the order does not alter our conclusion that an assignment has not occurred.

Fundamentally, a receiver is not an assignee.  The terms have separate legal meanings.  Black's Law Dictionary (7th ed) defines a "receiver" as "[a] disinterested person appointed by a court, or by a corporation or other person, for the protection or collection of property that is the subject of diverse claims (for example, because it belongs to a bankrupt or is otherwise being litigated)."  By contrast, an "assignee" is "[o]ne to whom property rights or powers are transferred by another."  *Id.*  ERISA does not state that a court may not protect and preserve funds that are subject to dispute.

Moreover, the warden does not act as a receiver when he deposits the funds in defendant's account.  We are not bound by the label used by the trial court when describing the warden's role.

A receiver is an officer of the court who protects and preserves property on behalf of the parties to a pending lawsuit.  65 Am Jur 2d, Receivers, § 1, p 654.  The purpose of a receivership is to protect the parties' rights to the property until a final disposition of the issues.  *Id.*, § 6, p 657.  A receiver also may control and manage property.  19 Michigan Law & Practice (1957), Receivers, § 1, p 351.

The characteristics of a receivership are not present here.  The warden does not manage, control, or even preserve the funds.  His legal duty is to place the pension benefits in defendant's account.

If the warden were a receiver, he still would not acquire a property interest:

> As a general rule it may be stated that property in the possession of a receiver is in the custody of the law, and the receiver's possession is the possession of the court for the benefit of those ultimately entitled.

11

## B. Appropriation of the funds
## after deposit in defendant's account

We next consider whether the distribution of pension funds *after they are deposited in defendant's account* contravenes ERISA. The prevailing view is that ERISA does not protect pension funds after the beneficiary receives them. We adopt this view and hold that ERISA does not preclude distribution pursuant to the SCFRA after the funds are deposited in an inmate's account.

The leading case on this subject is *Guidry v Sheet Metal*

---

> A receiver's possession of chattels does not of itself confer title on the receiver, or give the receiver, as distinguished from the court appointing him, an absolute right of possession, or determine or even affect the rights of the parties except so far as it preserves and retains control of the property to answer the final judgment. A receiver's right, being purely for the purposes of the suit, cannot outlast the suit or be used for any purpose not justified thereby. [19 Michigan Law & Practice, *supra*, § 41, p 382.]

Also, a receiver "is appointed to subserve the interests of all persons interested in the subject-matter committed to his care. A receiver, by his appointment, does not become a litigant in, or party to, the suit in which he is appointed." *Id.*, § 51, p 388. The appointment of a receiver does not affect parties' contractual rights. *Rowe v William Ford & Co*, 257 Mich 646, 650; 241 NW 889 (1932).

Assuming the warden were a receiver, he would have no greater title or interest than the court itself. The court's order merely requires the pension fund to mail the checks to defendant's prison address, where the warden deposits the funds in defendant's account. The warden does not acquire a property interest in the funds when they arrive at the prison. The dissent has not identified any property interest that it believes the warden acquires.

*Workers*, 10 F3d 700 (CA 10, 1993) (*Guidry II*), mod on reh 39 F3d 1078 (CA 10, 1994) (*Guidry III*).[11]  In these *Guidry* cases, a former union official pleaded guilty of embezzling funds from his union.  The union asserted an interest in the embezzler's pension benefits.  The federal district court granted the union a constructive trust against the pension plan, thus preventing the beneficiary from receiving the funds.  On its review, the United States Supreme Court held that this remedy violated ERISA's prohibition of alienation and assignment.  *Guidry v Sheet Metal Workers*, 493 US 365; 110 S Ct 680; 107 L Ed 2d 782 (1990) (*Guidry I*).

On remand, the district court granted a different remedy: garnishment of the pension benefits *after their deposit in the beneficiary's account*.  The United States Court of Appeals for the Tenth Circuit affirmed the garnishment order and held that it did not violate ERISA.  *Guidry II*, *supra* at 716.  The court determined that the text of subsection 206(d)(1), now subsection 1056(d)(1), ("[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated") was unclear.  The statute was ambiguous regarding whether the term "benefits" refers to "the right to future payment or the actual money paid under the plan and received

_____

[11]The modification of the opinion on rehearing in *Guidry III* did not affect the original panel's holding regarding the ERISA issue.

13

by the beneficiary." *Guidry II*, *supra* at 708.

In light of this ambiguity, the *Guidry II* court deferred to the Department of Treasury's reasonable interpretation of the statute. The department's ERISA regulations define "assignment" and "alienation" as "'any direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest *enforceable against the plan* in, or to, all or any part of a plan benefit payment which is, or may become, *payable* to the participant or beneficiary.'" *Guidry II*, *supra* at 708, quoting 26 CFR 1.401(a)-13(c)(1)(ii) (emphasis added). The regulations refer to a right or interest enforceable *against the plan*.

> [The union] seeks only to enforce a judgment against Mr. Guidry by garnishing his bank account containing pension benefits paid and received; [the union] does not seek to enforce an interest or right against the plan. Because garnishment of Mr. Guidry's received retirement income is not an action against the plan, we conclude it is not prohibited by ERISA 206(d)(1) as implemented by the ERISA Regulations. [*Guidry II*, *supra* at 710.]

The *Guidry II* court opined that the Treasury Department's interpretation was reasonable. The court noted that other statutes expressly protect benefits *after* they are received. For example, the Social Security Act, 42 USC 407(a), provides that "none of the moneys *paid or payable* or rights existing under this subchapter shall be subject to execution, levy,

14

attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." (Emphasis added.) Also, the Veterans' Benefits Act, 38 USC 5301(a), expressly precludes attachment or seizure of benefits "either *before or after receipt by the beneficiary.*" The *Guidry II* court concluded:

> Because Congress did not include similar explicit language protecting benefits in the related context in ERISA, we infer Congress made a deliberate decision [that] retirement income paid and received was not thereafter protected from garnishment. A similar argument was made by then Judge Kennedy writing for the Ninth Circuit in denying application of the anti-garnishment provision of the Consumer Credit Protection Act to wages that had been paid. *Usery [v First Nat'l Bank of Arizona*, 586 F2d 107, 111 (CA 9, 1978)]. Although not conclusive, the absence of explicit language extending to paid benefits supports the ERISA Regulations. [*Guidry II, supra* at 712.[12]]

Several courts have followed the *Guidry II* decision. See, e.g., *Trucking Employees of North Jersey Welfare Fund, Inc v Colville*, 16 F3d 52, 56 (CA 3, 1994) (agreeing with

---

[12]The *Guidry II* court also noted that the law of the case doctrine did not apply. The Supreme Court's opinion in *Guidry I* "did not explicitly decide in dicta that its holding with respect to the constructive trust extended as well to benefits paid from the plan and received by the participant." *Guidry II, supra* at 706.

Also, on rehearing in *Guidry III*, the Tenth Circuit Court of Appeals, sitting en banc, "affirm[ed] the primary holding of the *Guidry II* panel and conclude[d] ERISA section 206(d)(1) protects ERISA-qualified pension benefits from garnishment only until paid to and received by plan participants or beneficiaries." *Guidry III, supra* at 1083.

15

*Guidry II* that the Treasury Department regulation reasonably "construes the statute to forbid alienation of rights to future payments, rather than alienation of the actual money paid out"), and *State v Pulasty*, 136 NJ 356; 642 A2d 1392 (1994) (holding that ERISA did not preempt a state restitution order because received pension benefits are subject to judgment). But see *United States v Smith*, 47 F3d 681 (CA 4, 1995) (declining to follow *Guidry II* and holding that pension benefits that had been received were not subject to restitution).

Of particular interest is the decision in *Wright v Riveland*, 219 F3d 905 (CA 9, 2000). In *Wright*, a class of inmates sued the state of Washington's department of corrections, challenging the deduction of pension funds from the inmates' accounts to pay for the costs of incarceration under a state statute. The United States Court of Appeals for the Ninth Circuit held that ERISA's antialienation provision did not prohibit the deductions. The court found that subsection 206(d)(1) was unclear regarding whether it prohibits the alienation or assignment of funds after they are distributed to the beneficiary. The court then discussed the Treasury Department regulation and *Guidry II*, *Colville*, and *Smith*, and found *Guidry II* and *Colville* more persuasive than *Smith.*

16

Accordingly, we follow the lead of the Third and Tenth Circuits. We conclude that [the Treasury regulation's] interpretation of [subsection] 206(d)(1) is not arbitrary, capricious, or manifestly contrary to the statute and hold, based on the regulation's interpretation of [subsection] 206(d)(1), that this section does not preclude the Department from deducting funds pursuant to the [state of Washington] Statute from benefits received from ERISA-qualified pension plans. [*Wright, supra* at 921.[13]]

We also prefer the approach adopted by the overwhelming majority of federal courts. Once pension funds are deposited in an inmate's account, ERISA does not protect them. We agree with the *Guidry II* court that the text of subsection 206(d)(1) does not address whether benefits that the pensioner has already received are protected. The statute's silence on this issue requires deference to the reasonable interpretation set forth in the Treasury Department regulation. *Guidry II, supra; Chevron, supra.* That regulation clarifies that the statute protects against the alienation or assignment of rights *against the plan itself*. Other statutory schemes, including the Social Security Act, clearly protect benefits after their receipt. Congress did not include such expansive language in ERISA.

The Ninth Circuit Court of Appeals decision in *Wright* directly supports our decision. It expressly rejected an

---

[13]See also anno: *Effect of anti-alienation provisions of* [ERISA] *on rights of judgment creditors*, 131 ALR Fed 427-463 (collecting authorities).

17

ERISA challenge to a state statute that permitted deduction of pension funds from an inmate's account to pay for the costs of incarceration.

While courts may not create exceptions to ERISA's prohibition on assignment and alienation, *Guidry II* and its progeny do not create exceptions. They hold merely that the statutory prohibition does not apply after the funds have been received. The dissent asserts without any apparent basis that we have created an exception. In truth, we merely follow the prevailing federal authorities and hold that the appropriation of funds that have been received does not alienate or assign those funds. Where no alienation or assignment has occurred, the statutory prohibition does not apply. We have no occasion or need to "carve out exceptions" to a statutory prohibition that does not apply.

Defendant received the pension funds when they were sent to his current address and deposited in his prison account. At that point, ERISA did not protect the funds, and the state was free to seize and distribute the funds in accordance with the procedures set forth in the SCFRA and the trial court's order in this case.[14]

---

[14]The dissent suggests that the trial court's order is similar to the scheme struck down by the United States Supreme Court in *Guidry I*. *Guidry I*, however, involved a constructive trust imposed on the pension fund itself. *Guidry II* and its progeny make clear that funds that are appropriated *after the*

18

VI. Conclusion

The SCFRA sets forth procedures to reimburse Michigan taxpayers for the costs of caring for prison inmates under the jurisdiction of the Department of Corrections. An inmate's pension benefits in his account are "assets" that are subject to the SCFRA. The federal prohibition on alienation and assignment of pension benefits is not violated where an inmate is directed to receive pension benefits at his own address. Further, prevailing federal authorities establish that ERISA

---

*beneficiary receives them* are no longer protected by ERISA's antialienation clause. In this case, the pension fund itself is not garnished, nor is a constructive trust imposed on the fund. Rather, the fund is merely required to send the pension funds *to defendant himself* at his current address, where the funds are then deposited directly *in defendant's own account*. At that point, defendant has received the funds, and, as the overwhelming majority of federal courts have held, the funds are no longer protected by ERISA.

The United States Supreme Court's reasoning in *Guidry I* supports the distinction drawn by federal courts between garnishments from plans and appropriation of funds that the beneficiary has already received. The *Guidry I* Court noted that the policy underlying the antialienation clause is "to safeguard a stream of income for pensioners . . . ." *Guidry I, supra* at 376. Once the benefits are received, the stream of income has safely reached the pensioner. In light of this language, the Tenth Circuit Court of Appeals in *Guidry II* determined that the law of the case did not preclude the garnishment of funds deposited in the beneficiary's bank account: "As [*Guidry I*] refers only to a 'stream of income' that must be received, and not to the disposition of the income after it was received, we fail to see how the 'law of the case' bars garnishment of received income. The payments do not lose their character as income because they are used to satisfy debts." *Guidry II, supra* at 706. Nearly every federal court has adhered to this view.

19

does not protect pension proceeds that an inmate has already received.  The state may distribute the funds after they are deposited in the inmate's account to the extent permitted under the SCFRA.  Accordingly, we reverse the judgment of the Court of Appeals and reinstate the trial court's decision.

Maura D. Corrigan
Elizabeth A. Weaver
Clifford W. Taylor
Robert P. Young, Jr.

# STATE OF MICHIGAN

## SUPREME COURT

STATE TREASURER,

    Plaintiff-Appellant,

v                                         No. 120803

THOMAS K. ABBOTT,

    Defendant-Appellee,

and

AUTO BODY CREDIT UNION and
JOANN A. ABBOTT,

    Defendants.

_____

KELLY, J. (*dissenting*).

    The issue in this case is whether the Employee Retirement Income Security Act (ERISA)[1] prevents the State Treasurer from implementing its restitutive scheme under the State Correctional Facility Reimbursement Act (SCFRA). MCL 800.401 *et seq.* The restitutive scheme in this case has as its object to require defendant, an inmate at a state correctional

_____

    [1]29 USC 1001 *et seq.*

facility, to reimburse the state for the cost of his incarceration. Through court order, defendant's former employer was directed to send defendant's pension checks to defendant's prison account rather than to his credit union. The warden was made receiver for the checks and empowered to deposit them in the account, then disburse part of the proceeds to the state.

I conclude that the scheme effects an assignment of defendant's pension benefits under ERISA, violating that act's antialienation provision. 29 USC 1056(d)(1). Consequently, I would affirm the decision of the Court of Appeals.

## I. Factual & Procedural Background

After the circuit court implemented the restitutive scheme, defendant petitioned the Court of Appeals, which denied leave to appeal. We remanded to that Court as on leave granted. On remand, the Court of Appeals reversed and held that the trial court orders violate ERISA's antialienation provision because they constitute an assignment of defendant's pension benefits. 249 Mich App 107; 640 NW2d 888 (2001). The decision was grounded in the United States District Court opinion in *State Treasurer v Baugh*, 986 F Supp 1074 (ED Mich, 1997).

The majority now reverses the decision of the Court of Appeals and holds that the trial court orders are not an

assignment under the provisions of ERISA.

## II. Discussion

We interpret a federal statute in such manner as to give effect to the purpose for which Congress drafted it. If the United States Supreme Court has construed the language, we defer to its interpretations. Moreover, we defer to any reasonable construction given the statute by a federal agency empowered by Congress to interpret it. *Yellow Transportation, Inc v Michigan*, ___ US ___; 123 S Ct 371, 377; 154 L Ed 2d 377 (2002), citing *Chevron USA Inc v Natural Resources Defense Council, Inc*, 467 US 837, 842-843; 104 S Ct 2778; 81 L Ed 2d 694 (1984); *Barnhart v Walton*, 535 US 212, 217-218; 122 S Ct 1265; 152 L Ed 2d 330 (2002). In addition, although they are not binding on us, we give respectful consideration to the decisions of lower federal courts. *Yellow Freight System, Inc v Michigan*, 464 Mich 21, 29 n 10; 627 NW2d 236 (2001).

### A. Defining ERISA's antialienation provision

ERISA expansively regulates employee benefit programs. *Shaw v Delta Air Lines, Inc*, 463 US 85, 90; 103 S Ct 2890; 77 L Ed 2d 490 (1983); *Baugh*, 986 F Supp 1076 (1997). In so doing, it preempts "any and all state laws" that "relate to" a program covered by ERISA. 29 USC 1144(a).

3

## 1. Federal interpretation of ERISA's antialienation provision

ERISA subsection 206(d)(1), 29 USC 1056(d)(1), requires that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." The Secretary of the Treasury has defined "assignment" as:

> (ii) Any direct or *indirect* arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary. [26 CFR 1.401(a)-13(c)(1).]

The United States Supreme Court has held that garnishment of benefits from a covered plan constitutes an assignment for the purpose of subsection 206(d)(1)[2] *Guidry v Sheet Metal Workers Fund*, 493 US 365, 371-372; 110 S Ct 680; 107 L Ed 2d 782 (1990)(*Guidry I*), citing *Mackey v Lanier Collection Agency & Service, Inc*, 486 US 825, 836-837; 108 S Ct 2182; 100 L Ed 2d 836 (1988); see also *United Metal Products Corp v Nat'l Bank of Detroit*, 811 F2d 297 (CA 6,1987). Thus, in order to avoid the prohibition on assignments in subsection 206(d)(1), any court ordered remedy that relates to an ERISA plan must be

---

[2]A garnishment is a legal device that allows a person to obtain control over the property of another while it is in the hands of a third party. See Black's Law Dictionary (7th ed); Ballentine's Law Dictionary (3d ed). See, generally, MCL 600.4011; *Ward v Detroit Automobile Inter-Ins Exch*, 115 Mich App 30, 35; 320 NW2d 280 (1982), citing *Johnson v Kramer Bros Freight Lines, Inc*, 357 Mich 254; 98 NW2d 586 (1959).

meaningfully distinct from a court ordered garnishment. *Guidry I*, 493 US 372. In *Baugh*, a federal district court in Michigan found no meaningful distinction between the restitutive scheme used by the plaintiff in this case and the garnishment plans invalidated in *Guidry I* and *United Metal Products*. 986 F Supp 1076-1078.

### 2. The majority's interpretation of ERISA's antialienation provision

The majority recognizes that this Court must defer to a federal agency's interpretation of a federal statute. *Ante* at 6. Nonetheless, it fails to properly apply the definition of "assignment" expounded by the United States Treasury Department. Instead, it concludes that there is no meaningful distinction between the definition of "assignment" in the treasury regulation and other accepted legal meanings of the term.

After reviewing some legal definitions,[3] the majority concludes that the treasury regulation "plainly contemplates a transfer of the interest to *another person, i.e., a person other than the beneficiary himself*." *Ante* at 7 (emphasis in original). Thus, it reasons, "[a] property interest is assigned or alienated when it has been transferred to *another person*." *Ante* at 9. Applying this understanding, the

---

[3]*Ante* at 8-9 n 8.

5

majority concludes that plaintiff's restitutive scheme does not effect an assignment because the warden never obtains title to or an interest in defendant's pension benefits. *Ante* at 9.

The majority asserts that there are two bases for its conclusion that the trial court orders do not constitute an assignment or alienation: (1) the court ordered defendant to receive benefits at the prison, which is his current address, and (2) title to the benefits does not pass under the orders until after defendant receives them in his prison account. However, as I will show, these conclusions rest on a misunderstanding of the treasury regulation.

### B. Application

### 1. Garnishment

The majority claims that *Guidry II*[4] and *Wright v Riveland*[5] support its conclusions that plaintiff's restitutive scheme does not violate ERISA's antialienation provision. In *Guidry II*, the United States Court of Appeals for the Tenth Circuit held that subsection 206(d)(1) does not apply to benefits once a beneficiary receives them. *Guidry II*, 10 F3d 710. Accordingly, it found that the defendant's creditors could

---

[4]*Guidry v Sheet Metal Workers Fund*, 10 F3d 700 (CA 10, 1993) (*Guidry II*), mod on reh 39 F3d 1078 (CA 10, 1994)(*Guidry III*).

[5]219 F3d 905 (CA 9, 2000).

6

garnish the defendant's pension benefits that he had voluntarily deposited into his personal bank account. *Id*.

*Wright* concerned a prison inmate in the state of Washington. A Washington statute provided

> When an inmate . . . *receives* any funds in addition to his or her wages or gratuities, the additional funds shall be subject to the deductions in RCW 72.09.111(1)(a). . . . [Wash Rev Code 72.09.480(2).]

The Washington Department of Corrections took thirty-five percent of the defendant's pension payments pursuant to Wash Rev Code 72.09.111. The United States Court of Appeals for the Ninth Circuit found no violation of ERISA because the department had obtained control over the prisoner's benefits only after the prisoner had received them. *Wright*, 219 F3d 921.

These cases are inapplicable here. The restitutive programs at issue in *Wright* and *Guidry II* lack two fundamental components of plaintiff's scheme. First, no one was made a receiver of the defendants' benefits before they were deposited into the defendants' accounts.[6] Second, the courts

---

[6]The majority argues that the warden is not a receiver because he does not manage or exercise control over defendant's pension funds. *Ante* at 11-12 n 10. I disagree with this characterization of the warden's role in this scheme.

Random House Webster's College Dictionary (2000) states that "manage" means: "to take charge of; supervise." To

(continued...)

did not order the defendants' benefit plans to deliver the defendants' funds into specified accounts.

The majority reads the trial court orders in this case as requiring that:  "(1) defendant receive his monthly pension payments at his prison address and (2) the warden  distribute the funds after their deposit in defendant's prison account." *Ante* at 6.  However, the majority fails to acknowledge that one of the orders does much more.  It requires General Motors to disburse defendant's pension benefits to his prison address in the event defendant refuses to request it.[7]  In fact,

_____

[6](...continued)
"control" is "to exercise restraint or direction over." *Id*. The trial court orders charge the warden with the responsibility of supervising and directing the deposit of defendant's pension benefits.  Thus, it is evident that the warden retains these characteristics of a receiver.

Moreover, the warden also fulfills the ultimate function of a receiver.  In his capacity as receiver, he collects defendant's pension benefits to ensure that they remain available to satisfy the diverse claims on them created by this litigation.  If this assurance were not the purpose of the scheme, I see no reason why plaintiff would not simply attach the funds after they were deposited into defendant's credit union account.  Although we are not bound by the trial court's characterization of the warden's function, we should not abandon the dictates of common sense in evaluating that function.

[7]A March 10, 1997 order states:

* * *

3.   Defendant   Thomas   K.   Abbott   shall immediately direct General Motors Corporation, it's [sic] subsidiary or designee, to cause any pension

(continued...)

8

without awaiting defendant's compliance, on the same day the primary order was entered, the trial court entered a second order directing:

> 1. General Motors shall send all pension proceeds payable to Thoms K. Abbott . . . to Thomas K. Abbott's new address of record . . . .

These orders implicate a factor overlooked by the majority: subsection 206(d)(1) prohibits any indirect, as well as direct, assignment of benefits. The orders' provisions making the warden receiver for defendant of his pension benefits and directing General Motors to send defendant's pension checks to the warden make them an indirect assignment.

Contrary to the majority's assertion, the fact that the

---

[7](...continued)
payments due Defendant Thomas K. Abbott to be made payable to "[defendant]" at: PRISON ADDRESS, or Thomas K. Abbott's then current prison address. If defendant should refuse to so direct, this order shall be treated as the direction of the defendant to General Motors that the pension payments shall be made as directed above. Payments shall be made in this manner until Defendant Thomas K. Abbott is released from the physical custody of the Department of Corrections, or until further order of this Court.

> 4. This Court shall issue a separate Order directing General Motors to distribute the funds as described in paragraph 3 above should defendant Thomas K. Abbott refuse, or for any other reason fail, to comply with the provisions of paragraphs 3 above.

9

warden is made receiver of defendant's benefits is dispositive. According to the majority's own analysis, "'. . . property in the possession of a receiver is in the custody of the law, and the receiver's possession is in the possession of the court for the benefit of those entitled.'" *Ante* at 11 n 10, quoting 19 Michigan Law and Practice, Receivers, § 41, p 382. The majority claims that this definition of a receivership takes this case out of the reach of ERISA's prohibition on assignments.

At a minimum, plaintiff's restitutive scheme must be meaningfully distinct from an order of garnishment. *Guidry I, supra*. A constructive trust is not meaningfully distinct from an order of garnishment. *Id.*

We have held that "'"[t]rusts," in the broadest sense of the definition, embrace, not only technical trusts, but also obligations arising from numerous fiduciary relationships, such as agents, partners, bailees, et cetera.'" *Fox v Greene*, 289 Mich 179, 183; 286 NW 203 (1939), quoting *Rothschild v Dickinson*, 169 Mich 200; 134 NW 1035 (1912). Thus, a trustee is "'a person in whom some estate, interest, *or power* in or affecting property of any description is vested for the benefit of another.'" *Equitable Trust Co v Milton Realty Co*, 263 Mich 673, 676; 249 NW 30 (1933), quoting *Jones v Byrne*, 149 F 457, 463 (CC WD Ark, 1906)(emphasis supplied). We have

10

also held that possession and control are fundamental incidents of ownership. *Orel v Uni-Rak Sales Co, Inc*, 454 Mich 564, 568; 563 NW2d 241 (1997); *Merritt v Nickelson*, 407 Mich 544, 552; 287 NW2d 178 (1980); *Rassner v Fed Collateral Society, Inc*, 299 Mich 206, 213; 300 NW 45 (1941); *James S Holden Co v Connor*, 257 Mich 580, 592-594; 241 NW 915 (1932)(and cases cited therein); *Brown v Fifield*, 4 Mich 322, 327, 328 (1856).

Under the trial court's orders, defendant is never allowed to exercise control over his pension benefits.[8] The majority finds this fact irrelevant, but it is the determining factor that renders the trial court orders a violation of subsection 206(d)(1). Transferring possession and control of defendant's pension benefits to the warden before the benefits are deposited in defendant's prison account strips defendant of the ability to exercise the interests he has in his benefits.

Plaintiff's restitutive scheme is no less onerous than the constructive trust arrangement or garnishment struck down

---

[8]The first order directs that:

> 5.   Upon receipt of any such pension check, the Warden of the institution in the continuing capacity as receiver shall deposit the pension check into the account of Defendant Thomas K. Abbott . . . . The funds from that pension check shall be distributed as follows . . . .

11

in *Guidry I* and *United Metal Products*.[9]  The practical effect of the trial court orders is that the warden is able to control defendant's benefits before defendant receives them. The circuit court, on behalf of the Department of Corrections, obtained control of the benefits while they were still in the possession of defendant's employer, a third party.  This is a garnishment and is prohibited by ERISA's antialienation provision.[10]

2. Assignment of a right enforceable against the plan

Although I find that plaintiff's restitutive scheme is not meaningfully distinct from an order of garnishment, the finding is not necessary to my ultimate conclusion that the

------

[9]In her opinion, the Chief Justice asserts that "the overwhelming majority of federal courts have held [that] the funds are no longer protected by ERISA."  *Ante* at 21 n 14. However, the *only* federal court that has put thought into the specific issues presented in this case concluded that plaintiff's restitutive scheme is an assignment.  *Baugh*, *supra.*  Therefore, *all* federal courts that have considered the issues presented in this case are in disagreement with the majority.

[10]The majority's focus on transfer of title evidences its limited reading of the treasury regulation.  As I have noted, and the majority recognizes, constructive trusts are prohibited by ERISA's antialienation provision.  *Guidry I*, *supra.*  However, title does not pass in a constructive trust. Rather, a constructive trust is a "'formula through which the conscience of equity finds expression.'"  *Kent v Klein*, 352 Mich 652, 656; 91 NW2d 11 (1958), quoting *Beatty* v *Guggenhein Exploration Co,* 225 NY 380, 386; 122 NE 378 (1919).  It leaves title in the original holder but gives possession and control to another.  Thus, the fact that title to defendant's pension benefits does not pass to the warden does not distinguish this case from *Guidry I.*

12

scheme violates ERISA. ERISA's prohibition on alienation is not limited to payments. ERISA also prohibits alienation of any right, separate from the right to payment, that is enforceable against the plan.

Under the Uniform Commercial Code, defendant never becomes a holder of the instruments used to deliver his benefits. MCL 440.1201(20). Rather, the warden acquires a right enforceable against the plan when he takes control of defendant's pension check This is because the court orders give the warden the authority to enforce the withdrawal of funds from the plan. MCL 440.3301(ii).

This transfer of authority constitutes an "assignment" under the United States Department of Treasury's definition of the term. It is irrelevant that, afterward, the warden deposits the funds into defendant's prison account. Before the funds reach the account, rights that defendant is entitled to enforce against the plan are assigned to the warden in contravention of ERISA. See, generally, *Shinehouse v Guerin*, 20 E B C 1302 (ED Pa, 1996), aff'd 107 F3d 8 (CA 3, 1997).

## Conclusion

Plaintiff's restitutive scheme accomplishes by indirection what it cannot do by direction. It is an indirect assignment of pension benefits that is prohibited by ERISA. In *Guidry I*, the United States Supreme Court held that a

13

restitutive scheme could not overcome Congress's express intent to protect employee retirement benefits. This was true even where the employee's embezzlement had caused harm to the plan's beneficiaries.

In *United Metal Products*, the United States Court of Appeals for the Sixth Circuit held that there was no exception to ERISA's antialienation provision for fraud or criminal conduct. In *Baugh*, the United States District Court for the Eastern District of Michigan, relying on *Guidry I* and *United Metal Products*, concluded that plaintiff's restitutive scheme constituted an assignment under subsection 206(d)(1).

In each case, the court flatly refuted the contention that courts may carve out exceptions to ERISA's antialienation provision when it would serve public policy. Yet the majority carves out an exception by this decision.

The trial court's orders transfer a portion of defendant's pension benefits from the pension plan to the state. The orders accomplish this by acting on defendant's benefits before he receives them. That the orders run the pension benefits through defendant's prison account is of no legal significance. Defendant at no time has possession or receipt of the benefits. They might as well be run through the warden's account. As receiver for the benefits, the warden controls them until he distributes them according to

14

the orders.  The provision requiring the funds to be placed in defendant's prison account is a thinly veiled device to defeat the provisions of ERISA.

Neither plaintiff nor the majority has provided a meaningful distinction between the plaintiff's restitutive scheme and an order of garnishment.  Moreover, the scheme goes too far because, rather than constraining itself to acting on defendant's benefits themselves, it usurps a right only defendant is entitled to enforce against the plan.  Consequently, the scheme is prohibited by ERISA.

I would affirm the decision of the Court of Appeals.

Marilyn Kelly<br>
Michael F. Cavanagh<br>
Stephen J. Markman

15