# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 27, 2008

135251

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellant,

v

JAMES MCCAA,
      Defendant-Appellee.
_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 135251
COA: 270829
Wayne CC: 05-012920-01

On order of the Court, the application for leave to appeal the October 16, 2007 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

CORRIGAN, J., dissents and states as follows:

I dissent from the order denying the prosecution's application for leave to appeal. I would grant leave to consider the appropriate standards governing the state's efforts to collect reimbursement, including court-appointed attorney fees, from prisoners facing nonparolable life sentences. Because defendant will be housed and fed at taxpayer expense for the rest of his natural life, and the Legislature has directed a comprehensive scheme for prisoner reimbursement that accounts for this situation, I see a remand for assessment of defendant's ability to pay under *People v Dunbar*, 264 Mich App 240 (2004), as a pointless exercise.

## I. Facts and Procedural Posture

Defendant was convicted of first-degree murder, being a felon in possession of a firearm, and possession of a firearm during the commission of a felony after shooting a man to death at a house party in Detroit in 2005. Defendant's presentence investigation report (PSIR) listed his employment history, education, vocational training, health status, income, assets, and financial liabilities. A week before sentencing, the trial court entered a "Final Order for Reimbursement of Attorney Fees," ordering defendant to repay $1,610 for his court-appointed attorney. The order stated that fees not paid within 56 days were subject to a 20 percent late penalty on the amount owed. Defendant was then sentenced

to a mandatory term of nonparolable life in prison for his murder conviction. He did not object to this reimbursement order at sentencing. The trial court included the $1,610 attorney-fee reimbursement order as part of the judgment of sentence. The court also entered an "Order to Remit Prisoner Funds for Fines, Costs, and Assessments," directing the Michigan Department of Corrections to collect 50 percent of any amount over $50 from defendant's prison account to satisfy the financial obligations under the judgment, pursuant to MCL 769.1*l*.

The Court of Appeals vacated the part of the judgment of sentence ordering defendant to repay $1,610 in attorney fees and remanded for the trial court to consider defendant's ability to pay as required by *Dunbar*.

## II. Analysis

For the reasons set out in my dissenting statements in *People v Carter*, 480 Mich 1063 (2008), *People v Willey*, 481 Mich ___ (Docket No. 134368, entered May 23, 2008), *People v Rounsoville*, 481 Mich ___ (2008) (Docket No. 134841, entered June 27, 2008), and *People v Ransom*, 481 Mich ___ (2008) (Docket No. 134545, entered June 27, 2008), defendant is not entitled to a remand to the Court of Appeals for consideration of his ability to pay. First, defendant had notice of the fees and a meaningful opportunity to object to those fees. Second, neither the Sixth Amendment nor the Fourteenth Amendment compels a sentencing court to state that it considered a defendant's ability to pay before ordering him to repay the cost of his court appointed attorney when the defendant does not timely object to the repayment order. When the court decides to enforce collection or sanction the defendant for nonpayment, it must consider the defendant's ability to pay. Although the judgment of sentence states that overdue payments are subject to a 20 percent late penalty, the court has not enforced the repayment order or the late penalty.

Although this case is similar in many respects to *Carter*, *Willey*, *Rounsoville*, and *Ransom*, one distinguishing feature is the order requiring the Department of Corrections to collect 50 percent of defendant's prison account after the account exceeds $50. This order articulates the statutory provision regarding the recoupment of attorney fees that was effective when defendant was sentenced. MCL 769.1*l* provides:[1]

> If a prisoner under the jurisdiction of the department of corrections has been ordered to pay any sum of money as described in section 1k[2] and

---

[1] MCL 769.1*l* became effective on January 1, 2006, which was after defendant committed the crimes, but before the trial court ordered him to repay the cost of his court-appointed attorney.

[2] MCL 769.1k(1)(b)(iii) expressly permits the trial court to order a defendant to repay the costs of his court-appointed attorney.

the department of corrections receives an order from the court on a form prescribed by the state court administrative office, the department of corrections shall deduct 50% of the funds received by the prisoner in a month over $50.00 and promptly forward a payment to the court as provided in the order when the amount exceeds $100.00, or the entire amount if the prisoner is paroled, is transferred to community programs, or is discharged on the maximum sentence.

The statutory procedure negates consideration of defendant's ability to pay under *Dunbar* before ordering repayment of attorney fees. The Department of Corrections must deduct funds from defendant's prison account according to the above-noted statutory formula. Under the trial court's order, defendant will continue to have some discretionary income for incidentals in his prison account even if collection takes place because he will retain $50 and half of his account above this amount.[3] Further, the 28-year-old defendant is not indigent in the same manner as a person who is not incarcerated or will one day be released from prison. He is serving a mandatory term of nonparolable life in prison, so the state provides for the cost of his transportation, room, board, clothing, security, medical care, and other normal living expenses for the rest of his life. See, e.g., MCL 800.401a(b) (defining the "cost of care" as it relates to prisoners).[4] The futility of remanding for consideration of a defendant's ability to pay is especially apparent in cases involving prisoners serving nonparolable life sentences, because those prisoners have no living expenses or income-earning potential outside the prison walls for the rest of their lives. The Legislature has spoken on the subject by offering the remission procedure articulated in MCL 769.1*l*. The trial court properly followed that procedure here.[5]

---

[3] As the prosecution points out, collection on amounts over $50 will occur because defendant still owes restitution, fines, and other costs.

[4] Granted, the State Correctional Facility Reimbursement Act (SCFRA) permits the trial court to order a prisoner with any "assets" as defined by the act to reimburse the state for expenses incurred in caring for the prisoner. MCL 800.404(3); see also *State Treasurer v Abbott*, 468 Mich 143, 149 (2003). A prisoner without "assets," however, is not required to reimburse the state for his living expenses.

[5] During the last three years, the State Court Administrative Office has worked with the Department of Corrections and circuit courts statewide to collect more than $3.5 million from prisoners who have outstanding financial obligations. This was done by issuing orders to remit prisoner funds (sweep orders) similar to the one entered in this case.

For all of these reasons, the court's repayment plan does not enforce the repayment of attorney fees at a time when defendant cannot afford to pay those fees. Moreover, because the court has not yet enforced collection by sanctioning defendant for nonpayment, defendant's challenge to the reimbursement order was premature. See *Dunbar, supra* at 256 ("in most cases, challenges to the reimbursement order will be premature if the defendant has not been required to commence repayment"); see also *Blank, supra* at 242. Therefore, the trial court did not plainly err in failing to expressly consider defendant's ability to pay, and the Court of Appeals erred in vacating the trial court's repayment order and remanding for consideration of defendant's ability to pay.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 27, 2008

d0624

Clerk