PEOPLE v DUNBAR

Docket No. 249623. Submitted October 5, 2004, at Grand Rapids. Decided October 26, 2004, at 9:05 a.m. Leave to appeal sought.

Charles Dunbar was charged in the 60th District Court with possession with intent to deliver less than fifty grams of cocaine and possession with intent to deliver less than five kilograms of marijuana. The prosecution moved to dismiss the preliminary examination after an evidentiary ruling that would have required a police officer to provide information that could have revealed the identity of a confidential informant. At a second preliminary examination before a different judge, the police officer was not required to provide information concerning the confidential informant, and the defendant was bound over for trial. The Muskegon Circuit Court, Timothy G. Hicks, J., quashed the information, ruling that the multiple preliminary examinations violated the defendant's due process rights. The Court of Appeals, WILDER, P.J., and SAWYER and MARKEY, JJ., affirmed in an unpublished opinion per curiam, issued May 9, 2000 (Docket No. 221978). The Supreme Court reversed and remanded for further proceedings in the trial court, holding that the record did not support a conclusion that the prosecution had engaged in impermissible judge-shopping. 463 Mich 606 (2001). On remand, the trial court denied the defendant's motion to suppress evidence obtained following an investigatory stop and arrest of the defendant without a warrant, rejecting the defendant's contention that the arrest was illegal because it had resulted from an investigatory stop that was not supported by a reasonable suspicion of criminal activity because the informant was not reliable. The defendant was convicted in a bench trial, was sentenced as an habitual offender to consecutive sentences of imprisonment of nine months to twenty-two years for the cocaine conviction and three months to six years for the marijuana conviction, and was required to financially contribute toward the cost of his court-appointed attorney. The defendant appealed.

The Court of Appeals held:

1. The initial stop of the defendant was supported by a reasonable suspicion on the part of the police that the defendant was involved in criminal activity. The police received a tip from the

confidential informant that the defendant was in possession of a quantity of cocaine. The police considered the informant to be reliable because the informant had led the police to drug sellers on three prior occasions. The police surveilled the informant and the defendant at a location the informant provided and saw the informant and the defendant meet in front of a store, go behind the store, and emerge to go their separate ways.

2. The defendant's arrest without a warrant was lawful. There was probable cause for the arrest. After the police stopped the defendant, they asked the defendant to remove his hands from his pockets. The police then observed in the defendant's left hand a small, clear plastic bag that appeared to contain narcotics.

3. Remand is required for the trial court to reconsider its order that the defendant contribute toward the cost of his court-appointed attorney. In requiring a defendant to reimburse the cost of a court-appointed attorney, a court must provide some indication that it considered the defendant's foreseeable ability to pay. In this case, the trial court's comments in ordering reimbursement were insufficient to conclude that the court considered the defendant's financial circumstances.

Convictions and sentences affirmed, portion of judgment requiring reimbursement vacated, and case remanded.

1. SEARCHES AND SEIZURES — INVESTIGATORY STOPS.

An investigatory stop must be founded on a particularized suspicion, based on the totality of circumstances, that the person stopped was or was about to be engaged in criminal activity.

2. SEARCHES AND SEIZURES — ARRESTS WITHOUT WARRANTS.

The police may arrest an individual without a warrant if a felony has been committed and there exists probable cause to believe that the individual committed the felony or if the individual committed a misdemeanor in the presence of a police officer (MCL 764.15).

3. CRIMINAL LAW — COURT-APPOINTED ATTORNEYS — REIMBURSEMENT BY DEFENDANTS.

A court, in ordering a defendant to pay toward the cost of his court-appointed attorney, must provide some indication that it considered the defendant's foreseeable ability to pay.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Tony Tague*, Prosecuting Attorney, and *Charles F. Justian*, Chief Appellate Attorney, for the people.

State Appellate Defender (by *Norris J. Thomas, Jr.*, *Susan J. Smith*, and *Valerie R. Newman*) for the defendant.

Before: NEFF, P.J., and SMOLENSKI and SCHUETTE, JJ.

SMOLENSKI, J. In this case, the police received information from a confidential informant that defendant was in possession of a quantity of cocaine. Later that same day, when defendant was stopped on the street by police officers, he had suspected cocaine and marijuana on his person. Following a bench trial, defendant was convicted of possession with intent to deliver less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv), and possession with intent to deliver less than five kilograms of marijuana, MCL 333.7401(2)(d)(iii). He was sentenced as an habitual offender, MCL 769.10, to consecutive sentences of nine months to twenty-two years of imprisonment and three months to six years of imprisonment, respectively. Defendant appeals as of right, challenging the legality of his arrest and the procedures employed by the trial court in requiring him to repay the county for the cost of his legal fees.[1] We

---

[1] We note that this is not the first time this case has been through the appellate process. During defendant's first preliminary examination, the prosecutor moved to dismiss the case in light of a judicial ruling that would have required the arresting officer to provide certain information that could have revealed the confidential informant's identity. After refiling the charges, a second preliminary examination was held in which the officer was not required to divulge the information, and defendant was subsequently bound over for trial. The circuit court granted defendant's motion to quash, finding that his due process rights were violated. This Court affirmed in an unpublished opinion per curiam, issued May 9, 2000 (Docket No. 221978). Our Supreme Court reversed, holding that there was no evidence that the prosecutor was "judge-shopping" and no reason to doubt the veracity of the prosecutor's reason for requesting dismissal, protection of the confidential informant's identity. The case was remanded to the trial court for further proceedings, including a

affirm defendant's convictions and sentences, but vacate that portion of the judgment requiring reimbursement, and remand for reconsideration of that issue.

## I. MOTION TO SUPPRESS

Defendant argues that the trial court erred in denying his motion to suppress evidence seized at the time of his arrest on the ground that defendant's arrest was not supported by probable cause. The prosecution argued that the evidence was admissible because defendant had abandoned the drugs. The trial court rejected this argument because case law states that drugs abandoned after an illegal seizure must be suppressed,[2] but nonetheless denied defendant's motion because it found that the stop and subsequent arrest of defendant without a warrant was proper. A trial court's findings of fact in a suppression hearing are reviewed for clear error; but its ultimate decision on a motion to suppress is reviewed de novo. *People v Beuschlein*, 245 Mich App 744, 748; 630 NW2d 921 (2001).

At the evidentiary hearing on defendant's motion to suppress, Sergeant Tim Lewkowski, the officer in charge, testified as follows.[3] On January 27, 1999, Sergeant Lewkowski received information from a reliable confidential informant that defendant was in possession of cocaine. He deemed the informant to be reliable because the informant "had made purchases prior to this occasion at which time [sic, times] we

decision on defendant's motion to suppress, which is at issue in this appeal. 463 Mich 606, 617-618; 625 NW2d 1 (2001).

[2] The court relied on *People v Shabaz*, 424 Mich 42, 66; 378 NW2d 471 (1985).

[3] Because the trial court's decision on the motion to suppress was based on the evidence presented at the hearing, we limit our discussion of the facts to those presented at the hearing.

obtained narcotics." Sergeant Lewkowski had been personally involved in at least three previous drug buys made by the informant.

On the basis of the confidential informant's information, Sergeant Lewkowski and other officers from the West Michigan Enforcement Team conducted surveillance in the area where the informant had stated that defendant would be, near the intersection of Sanford and Columbia in Muskegon Heights.[4] Sergeant Lewkowski observed the informant meeting with defendant in front of a cellular phone store in the area. He testified that the pair went behind the store for a short time and, when they emerged together in front of the store again, each went his separate way.

When defendant started walking down the street, Sergeant Lewkowski drove his vehicle to a spot in front of defendant to block his path, and another officer, Sergeant James Christianson, placed the vehicle he was driving behind defendant. Sergeant Lewkowski was in plain clothes, but had on a police undercover jacket that displayed a badge and the police logo. After Sergeant Lewkowski got out of his car, he announced that he was a police officer and asked defendant to remove his hands from his pockets as a safety precaution. Sergeant Lewkowski testified that he did not have his gun drawn and did not threaten defendant. When defendant re-

---

[4] It is unclear how and when that day the confidential informant contacted Sergeant Lewkowski. His testimony concerning the circumstances was confusing and, at times, admittedly contradictory. It appears that a clearer picture could not be presented for fear of revealing the confidential informant's identity because any specifics would enable defendant to determine the informant's identity. Therefore, the trial court curtailed the defense's efforts to force Sergeant Lewkowski to testify more specifically and also limited its own clarification efforts. The judge at defendant's first preliminary examination set no such boundaries, which set in motion the events that led to the prior appeal in this case. *Dunbar, supra* at 463 Mich 606.

moved only his right hand, Sergeant Lewkowski asked defendant to also remove his left hand. Defendant complied, holding his hands about shoulder height, and Sergeant Lewkowski observed a small clear plastic bag in defendant's left hand. The bag appeared to contain multiple packages within it. As Sergeant Lewkowski approached defendant, he saw that the bag contained green and white substances. Sergeant Christainson approached defendant from behind, and, as he made contact with defendant's left arm, defendant dropped two bags.[5] Defendant was subsequently arrested.

Defendant testified at the suppression hearing that he was alone before and after he visited the cell phone store until he was confronted by Sergeant Lewkowski. According to defendant, Sergeant Lewkowski got out of his vehicle with his gun drawn and identified himself as a police officer. Defendant's testimony about what subsequently occurred was the same as Sergeant Lewkowski's, except defendant denied he had two bags in his left hand. Defendant admitted that he had one plastic bag containing marijuana, but contended that Officer Christianson found the bag of cocaine while he was searching the area, after he had already placed defendant in handcuffs. Defendant maintained that the bag of cocaine was found several feet away from him near the street curb and denied ownership of the cocaine.

### A. INITIAL STOP

Defendant asserts that the police did not have probable cause to arrest him because the prosecution presented no evidence to establish that the confidential informant's tip was credible and stemmed from per-

---

[5] Apparently, Sergeant Lewkowski noticed, after defendant dropped the bag, that defendant actually had been holding two clear plastic bags, one containing marijuana and the other containing rock cocaine.

sonal knowledge, other than the officer's testimony that he believed the informant was reliable. Therefore, defendant argues that the narcotics subsequently recovered are inadmissible because the arrest was illegal.

Both the United States Constitution and the Michigan Constitution guarantee the right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "Generally, seizures are reasonable for purposes of the Fourth Amendment only if based on probable cause."[6] *People v Lewis*, 251 Mich App 58, 69; 649 NW2d 792 (2002). However, an exception to the probable cause requirement exists and applies when the police have reasonable and articulable suspicion that crime is afoot. *People v Green*, 260 Mich App 392, 396; 677 NW2d 363 (2004); *Lewis, supra.* A person may be detained on reasonable suspicion in an investigatory stop as long as the police are diligently pursuing a means of investigation that is likely to confirm or dispel their suspicions quickly. *People v Chambers*, 195 Mich App 118, 123; 489 NW2d 168 (1992). Here, the police detained defendant in order to ascertain whether he had just been involved in a drug transaction. There was no evidence presented to indicate that defendant was under arrest.[7] The officer who

---

[6] There is no dispute that defendant was "seized" within the meaning of the Fourth Amendment. Testimony indicated that defendant's path was blocked by officers in front of and behind him. *People v Shankle*, 227 Mich App 690, 693; 577 NW2d 471 (1998) ("A 'seizure' occurs within the meaning of the Fourth Amendment if, in view of all the circumstances surrounding an encounter with the police, a reasonable person would have believed that the person was not free to leave.")

[7] Indeed, the officer's and defendant's testimony regarding the circumstances surrounding the stop differ only in that defendant stated that the officer drew his gun as he approached defendant and announced he was a police officer. However, an officer drawing his weapon or even handcuffing a defendant does not transform a stop into an arrest. *Green, supra* at 397-398.

made the initial contact with defendant identified himself and, for the officers' safety before questioning, asked defendant to remove his hands from his coat pockets. When defendant complied, he held what appeared to be a clear plastic bag in his left hand, which bag the officer suspected contained narcotics. Thus, the facts indicate that defendant was detained pursuant to an investigatory stop.[8]

The key initial issue, then, is whether the police had sufficient information to justify the forcible stop of defendant.

> Police officers may make a valid investigatory stop if they possess "reasonable suspicion" that crime is afoot. Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.
>
> A valid investigatory stop must be justified at its inception and must be reasonably related in scope to the circumstances that justified interference by the police with a person's security. Justification must be based on an objective manifestation that the person stopped was or was about to be engaged in criminal activity as judged by those versed in the field of law enforcement when viewed under the totality of the circumstances. The detaining officer must have had a particularized and objective basis for the suspicion of criminal activity. [*People v Champion*, 452 Mich 92, 98-99; 549 NW2d 849 (1996) (citations omitted).]

Accordingly, we must consider all the facts known to the officers at the time they approached defendant to determine whether these facts constituted reasonable suspicion that defendant was involved in an illegal activity.

---

[8] Accordingly, defendant's reliance on case law regarding the indicia of reliability necessary to justify a search warrant or an arrest based on a confidential informant's information, i.e., the probable-cause standard, is misplaced.

Defendant contends that the evidence presented at the evidentiary hearing did not establish that the police had a particularized basis for their suspicion that defendant had drugs on his person or otherwise was involved in an illegal activity. Defendant argues that the information provided by the confidential informant, combined with no independent investigation by the police, amounted to no more than a "hunch" that defendant was involved in a crime. We disagree.

Even when an investigatory stop is based, at least in part, on information from an informant, the critical inquiry remains whether the officer's suspicion was reasonable when considered in light of the totality of circumstances. *People v Tooks*, 403 Mich 568, 575-576; 271 NW2d 503 (1978).[9] Part of this reasonableness inquiry includes considering the reliability of the informant's information. In *id.* at 577, our Supreme Court set forth three factors that a court should examine when making this determination: "(1) the reliability of the particular informant, (2) the nature of the particular information given to the police, and (3) the reasonability of the suspicion in light of the above factors."[10]

In delineating these factors, the *Tooks* Court relied on the United States Supreme Court's decisions in *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), which announced the "reasonable suspicion" test for determining the validity of a stop, and *Adams v Williams*, 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972), which extended the *Terry* stop rationale to situations in which the stop was prompted by an

---

[9] This point was more recently reaffirmed in *People v Faucett*, 442 Mich 153, 169-170; 499 NW2d 764 (1993).

[10] Michigan case law continues to utilize these factors in determining whether an informant's tip constitutes sufficient reasonable suspicion to justify an investigatory stop. See *Faucett, supra* at 163 n 11.

unverified tip from a known informant. *Tooks, supra* at 575-576. In *Adams*, the Court held that the forcible stop of the defendant was justified, even though the tip that led to the stop was unverified, because the informant was known to the police officer and had provided information in the past. *Adams, supra* at 146. Comparing the requisite levels of reliability for a stop and an arrest, *Adams* stated:

> Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, the information carried enough indicia of reliability to justify the officer's forcible stop of [the defendant].

> In reaching this conclusion, we reject [the defendant's] argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response. [*Id.* at 147 (citations omitted).]

In this case, Sergeant Lewkowski testified that the confidential informant was known to him and previously had been involved with at least three successful drug buys. Although details of the previous buys were not revealed, Sergeant Lewkowski's belief that the informant was reliable was a factor for the court to consider. Here, we defer to the court's assessment of an officer's credibility. *People v Farrow*, 461 Mich 202, 209;

600 NW2d 634 (1999). On the basis of the informant's information that defendant had cocaine, the police went to the area where the informant stated defendant would be and observed defendant meet with the informant. Sergeant Lewkowski was familiar with defendant and recognized him as the person the informant stated had cocaine. The informant and defendant then went behind a building for a short time, reappeared, and went their separate ways. The only evidence presented to the contrary was defendant's testimony that he did not meet with anyone after leaving the cellular phone store. But, again, we do not interfere with the trial court's credibility determination. *Id.* On the basis of these facts, we find that the trial court did not clearly err in concluding that there was sufficient indicia of reliability to provide the police with reasonable suspicion that defendant had just been involved in criminal activity, which justified the forcible stop.

### B. ARREST WITHOUT A WARRANT

The next question becomes whether defendant's subsequent arrest was lawful. The police may arrest an individual without a warrant if a felony has been committed and there exists probable cause to believe that the defendant committed the felony or if the defendant committed a misdemeanor in the officer's presence. MCL 764.15. Probable cause is found when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe that an offense had been or is being committed. *Champion, supra* at 115. Defendant was holding two clear plastic bags in his left hand when he removed them from his pocket, which bags the officer suspected contained drugs because of the multiple individual packages within them. As he approached defendant, the

officer noticed that the bags contained a green and a white substance that, on the basis of his experience, he believed to be marijuana and cocaine. Given these facts, the trial court did not clearly err in finding that probable cause existed to arrest defendant on the basis of the officer's reasonable belief that defendant was in possession of narcotics. Accordingly, the trial court properly denied defendant's motion to suppress.

### II. COURT-APPOINTED ATTORNEY COSTS

Defendant also argues that the trial court erred in requiring him to financially contribute to the cost of his court-appointed attorney without first assessing his ability to pay. Because defendant failed to object below, we review only for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Both parties agree with *People v Nowicki*, 213 Mich App 383, 388; 539 NW2d 590 (1995), that a defendant may be required to reimburse the county for the cost of his court-appointed attorney. But *Nowicki* only addressed whether the court could order reimbursement and did not address "the effect of a defendant's inability to pay on an order to reimburse the county for costs of legal representation" because the defendant in that case did not claim an inability to pay. *Id.* at 386 n 1. In resolving the issue before it, the *Nowicki* Court relied on *Davis v Oakland Circuit Judge*, 383 Mich 717; 178 NW2d 920 (1970). However, *Davis* also does not provide us with any guidance regarding a defendant's claim of indigency in the face of a reimbursement order for court-appointed attorney costs. *Davis* simply held that the trial court has discretionary power to require previously unknown assets of a defendant to be applied

toward defrayment of the public cost of providing an indigent with a court-appointed attorney. *Id.* at 720.

Defendant argues that federal constitutional law has superceded *Davis* and *Nowicki*, but fails to recognize that *Davis* and *Nowicki* do not directly speak about the issue at bar and, therefore, are unaffected by the law defendant cites.[11] Defendant's argument is more aptly framed as asserting that the trial court's failure to assess defendant's ability to pay before ordering reimbursement for attorney fees violates defendant's right to due process because of the principles espoused in several United States Supreme Court decisions.

The United States Court of Appeals for the Fourth Circuit, in *Alexander v Johnson*, 742 F2d 117, 124 (CA 4, 1984), summarized these decisions and their requirements:

> Although there is no single model to which all state repayment programs must conform, the Supreme Court has carefully identified the basic features separating a constitutionally acceptable recoupment or restitution program from one that is fatally defective. *See Fuller v Oregon*, 417 US [40, 47-54; 94 S Ct 2116; 40 L Ed 2d 642 (1974)]; *James v Strange*, 407 US [128, 135-139; 92 S Ct 2027; 32 L Ed 2d 600 (1972)]. See also *Bearden v Georgia*, 461 US 600; 103 S Ct 2064; 76 L Ed 2d 221 (1983). In *James*, the first of the three decisions bearing on this question, the Supreme Court emphasized that the indigent accepting court-

---

[11] Defendant also asserts that *Nowicki's* holding was contrary to past Michigan case law, which held that only costs authorized by statute could be imposed on a defendant as part of his sentence. Defendant recognizes that the *Nowicki* Court distinguished these cases because a defendant's "obligation to reimburse the county for legal fees and costs is completely independent of his sentence." *Nowicki, supra* at 386. But defendant asserts that this is an impermissible distinction pursuant to *Giaccio v Pennsylvania*, 382 US 399; 86 S Ct 518; 15 L Ed 2d 447 (1966). However, *Giaccio* held that imposition of attorney fees on an *acquitted* defendant violates due process and, thus, has no bearing on the *Nowicki* decision.

appointed counsel could not be subjected to more severe collection practices than other civil debtors without running afoul of the equal protection clause. In *Fuller,* decided two years later, the Court offered important clarifications of the developing law in this area by upholding an Oregon reimbursement plan that required an indigent to repay court-appointed counsel fees as a condition of probation. The Oregon approach, the Court explained, contained none of the invidious collection practices condemned in *James,* provided an array of procedural and substantive safeguards designed to preserve the indigent's basic right to counsel, and authorized reimbursement from the defendant only when he could afford to pay without substantial hardship. Finally, in *Bearden,* decided nearly a decade later, the Court added a new gloss to the general jurisprudence in this area by ruling that an inmate violating any monetary requirement of his probation or restitution regimen cannot be imprisoned if his non-compliance results from poverty alone.

From the Supreme Court's pronouncements in *James, Fuller,* and *Bearden,* five basic features of a constitutionally acceptable attorney's fees reimbursement program emerge. First, the program under all circumstances must guarantee the indigent defendant's fundamental right to counsel without cumbersome procedural obstacles designed to determine whether he is entitled to court-appointed representation. Second, the state's decision to impose the burden of repayment must not be made without providing him notice of the contemplated action and a meaningful opportunity to be heard. Third, the entity deciding whether to require repayment must take cognizance of the individual's resources, the other demands on his own and family's finances, and the hardships he or his family will endure if repayment is required. The purpose of this inquiry is to assure repayment is not required as long as he remains indigent. Fourth, the defendant accepting court-appointed counsel cannot be exposed to more severe collection practices than the ordinary civil debtor. Fifth, the indigent defendant ordered to repay his attorney's fees as a condition of work-release, parole, or probation cannot

be imprisoned for failing to extinguish his debt as long as his default is attributable to his poverty, not his contumacy.

Thus, we must determine if the sentencing court's procedure in this case passes constitutional muster, as there is no statutory procedure in place.[12] Defendant specifically contends that the trial court's procedure for imposing attorney fees on a criminal defendant violates due process because it lacks the second and third features noted above.

Defendant first argues that the trial court's decision to order repayment was made without notice. But this is simply untrue. Paragraph 7 of the Petition and Order for Court Appointed Attorney, which defendant signed and presumably understood, states, "I understand that I may be ordered to repay the court for all or part of my attorney and defense costs." In regard to defendant's opportunity to be heard, defendant was not prevented from objecting at sentencing and asserting his indigency.

The crux of defendant's claim appears to be that the trial court should have made a specific finding on the record regarding his ability to pay. We do not believe that requiring a court to consider a defendant's financial situation necessitates such a formality, unless the defendant specifically objects to the reimbursement amount at the time it is ordered, although such a finding would provide a definitive record of the court's consideration. However, the court does need to provide some indication of consideration, such as noting that it reviewed the financial and employment sections of the defendant's presentence investigation report or, even

---

[12] We encourage the Legislature to codify such a procedure. Because the due process concerns are nearly identical to those implicated where restitution is ordered, the restitution statute, MCL 769.1a, may provide a useful framework.

more generally, a statement that it considered the defendant's ability to pay. See *People v Grant*, 455 Mich 221, 242, 243 n 30; 565 NW2d 389 (1997). The amount ordered to be reimbursed for court-appointed attorney fees should bear a relation to the defendant's *foreseeable* ability to pay.[13] A defendant's apparent inability to pay at the time of sentencing is not necessarily indicative of the propriety of requiring reimbursement because a defendant's capacity for future earnings may also be considered. See *Grant, supra* at 242 n 27; *United States v Gabriele*, 24 F3d 68, 73 (CA 10, 1994).

In this case, we find the court's comments insufficient to conclude that the court considered defendant's financial circumstances. After pronouncing sentence, the sentencing judge simply stated, "Fines and costs, $60 to the DNA test, $60 to the crime victim rights fund. It's a bench trial so the PD fund will make it only $450 and $150 to the forensic lab for the testing fee here." Although the court had the presentence report before it, the record is devoid of any indication that the court recognized that defendant's ability to pay needed to be considered when imposing a reimbursement requirement, unlike fines and costs. Therefore, we remand this case for the court to reconsider its reimbursement order in light of defendant's current and future financial circumstances.[14] Additionally, we vacate that

---

[13] See *Lewis v Dep't of Corrections*, 232 Mich App 575, 584; 591 NW2d 379 (1998) (the reinstatement of the petitioner's obligation to pay filing fees was not error where the court considered the petitioner's financial situation); *People v LaPine*, 63 Mich App 554, 558; 234 NW2d 700 (1975) (an abuse of discretion was not found in requiring a defendant to reimburse the county for the cost of transcripts furnished to perfect an appeal in which the reimbursement fairly reflected the defendant's ability to pay).

[14] Just as an evidentiary hearing is not required at the trial level, one is not required on remand. The court may obtain updated financial information from the probation department.

portion of defendant's judgment of sentence requiring defendant to pay $450 for his court-appointed attorney. If, in its discretion, the trial court determines that reimbursement is appropriate, it should establish the terms pursuant to which repayment is required in a separate order.[15]

It is important to recognize that the purpose of the court considering a defendant's financial situation is to ensure that "repayment is not required as long as he remains indigent." *Alexander, supra* at 124; see also *Fuller, supra* at 53-54. We note that, in most cases, challenges to the reimbursement order will be premature if the defendant has not been required to commence repayment. *People v Guajardo*, 213 Mich App 198, 202; 539 NW2d 570 (1995); *People v LaPine*, 63 Mich App 554, 556, 558; 234 NW2d 700 (1975). "[I]f payment is impossible or would constitute an undue hardship," the court has the ability to modify the amount or conditions of repayment or withdraw the order upon a proper motion by the defendant. *LaPine, supra* at 558.

Defendant's convictions and sentences are affirmed. We vacate that portion of the judgment requiring defendant to reimburse the county $450 for his legal fees and remand to the trial court for reconsideration of this issue in light of the principles espoused above. We do not retain jurisdiction.

---

[15] Because Michigan currently lacks a statutory scheme which authorizes repayment of court-appointed attorney fees, repayment may not be imposed as part of the sentence. "[D]efendant's obligation to reimburse the county for legal fees and costs is completely independent of his sentence." *Nowicki, supra* at 386.