# Order

**Michigan Supreme Court**
**Lansing, Michigan**

February 8, 2008

134687

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellant,

v

STEVEN MICHAEL CARTER,
      Defendant-Appellee.

_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC:  134687
COA:  270195
Wayne CC:  05-011783-01

On January 9, 2008, the Court heard oral argument on the application for leave to appeal the July 3, 2007 judgment of the Court of Appeals.  On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by the Court.

CORRIGAN, J., dissents and states as follows:

I dissent from the order denying leave to appeal.  I would grant leave and reverse the Court of Appeals judgment insofar as it remands the case to the trial court to consider sua sponte defendant's financial circumstances before imposing as a condition of probation the repayment of court-appointed attorney fees.  Twenty-one years ago this Court unanimously held that MCL 771.3(6)(a) does not require a sentencing court to inquire into the defendant's ability to pay before imposing the repayment of attorney fees as a condition of probation.  *People v Music*, 428 Mich 356, 357 (1987); see also *People v Grant*, 455 Mich 221 (1997); *People v Hill*, 430 Mich 898 (1988).  The trial court in this case conducted the sentencing proceeding under controlling principles of law. *Music*.  The majority *sub silentio* overturns this authority in allowing the Court of Appeals judgment to stand.

I would further grant to overrule *People v Dunbar*, 264 Mich App 240 (2004), which is inconsistent with *Music*, insofar as it chose a case from the United States Court of Appeals for the Fourth Circuit to conclude that absent any objection to the order requiring the repayment of attorney fees, the federal constitution compels a state court to consider a defendant's ability to pay without any claim of indigency by the defendant.

A court is compelled to inquire into ability to pay before sanctioning a defendant by revoking probation; it need not conduct such an inquiry sua sponte, before imposing costs. The imposition of costs is distinct from a sanction for nonpayment.

## I. Facts and Procedural Posture

Defendant was charged with fourth-degree criminal sexual conduct (CSC IV) (force or coercion) after grabbing the victim's buttocks as she walked out of a Church's Chicken restaurant in Detroit. Because defendant was indigent, the court appointed counsel for him. The order appointing counsel explicitly stated that the court might require defendant to pay the cost of his court-appointed attorney. After a jury trial, defendant was convicted of CSC IV. At sentencing, the court did not mention that defendant would be required to reimburse the county for the cost of appointed counsel. Defendant did, nonetheless, sign a probation order acknowledging that he agreed to pay attorney fees of $730 as a condition of his probation.

The Court of Appeals affirmed defendant's conviction, but remanded "for the trial court to consider defendant's attorney fees in light of his current and future financial circumstances and for resentencing." *People v Carter*, unpublished opinion per curiam of the Court of Appeals, issued July 3, 2007 (Docket No. 270195), p 1. In regard to defendant's financial ability to repay attorney fees, the Court of Appeals pointed out that the issue was unpreserved, so it reviewed the claim for plain error affecting substantial rights. The Court of Appeals held that "a court must indicate that, in assessing attorney fees, it considered defendant's ability to pay. *Dunbar, supra* at 254-255." *Carter, supra* at 7.

> Defendant failed to raise the issue of his ability to pay the assessed fees and costs at sentencing. Therefore, the court was not required to hold a hearing. See *Music, supra* at 361-362. However, in assessing attorney fees to defendant, the court failed to indicate whether it considered defendant's financial circumstances. Therefore, we remand this case for the trial court to consider these assessments in light of defendant's current and future financial circumstances. *Dunbar, supra* at 255. [*Carter, supra* at 7.]

The prosecution appealed. This Court directed the Clerk to schedule oral argument on whether to grant the application or take other peremptory action. 480 Mich 938 (2007). The order directed the parties to submit supplemental briefs "addressing whether the constitutional underpinnings of *People v Dunbar*, 264 Mich App 240 (2004), are sound." *Id*.

## II. Standard of Review

Defendant did not argue at sentencing that the court was required to inquire into his financial ability to pay before ordering him to reimburse the court for attorney fees. This Court reviews this unpreserved issue for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 774 (1999); *Dunbar, supra* at 251.

## III. Analysis

## A. MCL 771.3(6)(a) Requirements

The sentencing court ordered defendant to pay the cost of his court-appointed attorney as a condition of probation under MCL 771.3(2).[1] MCL 771.3(6)(a) discusses a sentencing court's obligation to consider the defendant's ability to pay these fees:

> If the court imposes costs under subsection (2) as part of a sentence of probation, all of the following apply:

> (a) The court shall not require a probationer to pay costs under subsection (2) unless the probationer is or will be able to pay them during the term of probation. In determining the amount and method of payment of costs under subsection (2), the court shall take into account the probationer's financial resources and the nature of the burden that payment of costs will impose, with due regard to his or her other obligations.

---

[1] MCL 771.3 provides, in pertinent part:

> (2) As a condition of probation, the court may require the probationer to do 1 or more of the following:

> * * *

> (c) Pay costs pursuant to subsection (5).

> * * *

> (5) If the court requires the probationer to pay costs under subsection (2), the costs shall be limited to expenses specifically incurred in prosecuting the defendant or *providing legal assistance to the defendant* and supervision of the probationer. [Emphasis added.]

In *Music*, this Court unanimously held that MCL 771.3(6)(a)[2] does not require "that a sentencing judge inquire, before ordering that a defendant pay costs, as to the defendant's ability to pay the costs." *Music, supra* at 357. This Court agreed with the Court of Appeals holding that the statute does *not* require that the sentencing court hold a hearing or make findings on the record to determine whether a defendant, who has not asserted an inability to pay costs, is able to make such payment. *Id.* at 359. This Court also accepted the explanation by the Court of Appeals that the statute distinguishes between the *imposition* of costs and the sanctioning for the nonpayment of costs; a court may impose costs without considering the defendant's ability to pay, but may not enforce payment of those costs without determining whether the defendant is able to pay. *Id.* at 360. This Court concluded as follows:

> [MCL 771.3(6)(a)] does not expressly state that a trial court must conduct a hearing to determine whether a defendant has the ability to pay costs. In the absence of a clear statement from the Legislature, the statute is to be given a reasonable interpretation. A probationer is free to ask the sentencing judge to reduce the amount of restitution or costs, and it is clear that a probationer cannot be punished for failure to pay restitution or costs that the probationer cannot afford. Moreover, a defendant who timely asserts an inability to pay restitution or costs must be heard. In that situation, a sentencing judge shall determine whether the restitution or costs are within the defendant's means. [*Music, supra* at 361-362.]

Subsequently, in *People v Hill*, 430 Mich 898 (1988), this Court, citing *Music, supra*, explained, "Unless a defendant indicates an inability to pay, the sentencing judge need not inquire into the defendant's ability to pay prior to imposing costs and restitution as conditions of probation." *Hill, supra* at 899.

Here, the sentencing court imposed attorney fees as a condition of defendant's probation, as permitted by MCL 771.3(2). Defendant had notice of the fees and an opportunity to object, but did not do so. The petition and order appointing counsel stated, "I understand that I may be ordered to contribute and/or reimburse the court for all or part of my attorney and defense costs."[3] In *Dunbar, supra* at 254, the defendant's petition and order appointing counsel similarly stated that he "may be ordered to repay the court" for his court-appointed attorney fees. The *Dunbar* panel held that this petition

---

[2] At the time this Court decided *Music*, what is now MCL 771.3(6)(a) was MCL 771.3(5)(a). The pertinent statutory language at the time *Music* was decided was almost identical to the present language.

[3] The petition and order also stated, "THE DEFENDANT SHALL CONTRIBUTE AND/OR REIMBURSE THE COURT AT A RATE OF _____." The order necessarily left blank the amount defendant would be required to pay; the appointed attorney's fee was not yet known because trial had not yet commenced.

and order sufficiently notified the defendant of the court's decision to order the payment of attorney fees. *Id.* The petition and order in the instant case, which is virtually identical to the one at issue in *Dunbar*, similarly notified defendant about his responsibility to pay the attorney fees.

Defendant also had an opportunity to object. The *Dunbar* panel held that the defendant, who was given notice of the fees by the petition and order appointing counsel, was given the opportunity to object at sentencing. *Id.* at 254. "In regard to defendant's opportunity to be heard, defendant was not prevented from objecting at sentencing and asserting his indigency." *Id.* Similarly in the instant case, defendant, who had prior notice of the fees through the petition and order appointing counsel, had an opportunity to object at sentencing. Further, on the day of the sentencing hearing, defendant signed the probation order in which he agreed to pay $730 in attorney fees. He could have objected to the fees at any time on the record; he also signed the order without any protest. Thus, defendant had notice of the fees and a meaningful opportunity to object to those fees.

Under *Music*, the sentencing court did not violate MCL 771.3(6)(a) by imposing attorney fees without holding a hearing or stating on the record that it considered defendant's financial resources. The sentencing court was required to consider defendant's financial resources only if he timely asserted an inability to pay. Because defendant had notice of the fees but did not timely object and assert an inability to pay, MCL 771.3(6)(a) did not require the sentencing court, before ordering defendant to pay the cost of his court-appointed attorney , to make a finding on the record that he was able to make such a payment. *Music, supra* at 357, 359-362.[4]

## B. Constitutional Requirements

In *Dunbar, supra* at 252, the issue was whether a sentencing court may constitutionally require a defendant to contribute to the cost of his court-appointed attorney without first assessing his ability to pay.[5] The *Dunbar* panel adopted the test from *Alexander v Johnson*, 742 F2d 117, 124 (CA 4, 1984), to determine whether a sentencing court's procedure passes constitutional muster. In *Alexander*, the Fourth Circuit Court of Appeals discussed *James v Strange*, 407 US 128 (1972), *Fuller v*

---

[4] Defendant is free to petition the court at any time for remission of the payment of attorney fees or any unpaid portion, if he contends that he is unable to pay. MCL 771.3(6)(b).

[5] In *Dunbar*, MCL 771.3 did not apply because the defendant was not sentenced to probation. At the time *Dunbar* was decided, no statutory procedure existed governing the imposition on criminal defendants the costs of court-appointed attorneys. *Dunbar, supra* at 254, 256 n 15.

*Oregon*, 417 US 40 (1974), and *Bearden v Georgia*, 461 US 600 (1983), which all involved challenges to the constitutionality of statutory attorney-fee recoupment schemes. The Fourth Circuit held that the following constitutional principles emerged from those cases:

> From the Supreme Court's pronouncements in *James, Fuller*, and *Bearden*, five basic features of a constitutionally acceptable attorney's fees reimbursement program emerge. First, the program under all circumstances must guarantee the indigent defendant's fundamental right to counsel without cumbersome procedural obstacles designed to determine whether he is entitled to court-appointed representation. Second, the state's decision to impose the burden of repayment must not be made without providing him notice of the contemplated action and a meaningful opportunity to be heard. *Third, the entity deciding whether to require repayment must take cognizance of the individual's resources, the other demands on his own and family's finances, and the hardships he or his family will endure if repayment is required.* The purpose of this inquiry is to assure repayment is not required as long as he remains indigent. Fourth, the defendant accepting court-appointed counsel cannot be exposed to more severe collection practices than the ordinary civil debtor. Fifth, the indigent defendant ordered to repay his attorney's fees as a condition of work-release, parole, or probation cannot be imprisoned for failing to extinguish his debt as long as his default is attributable to his poverty, not his contumacy. [*Alexander, supra* at 124 (emphasis added).]

After the *Dunbar* panel cited this test, it held that a sentencing court may order reimbursement of a court-appointed attorney's fees without specific findings on the record regarding the defendant's ability to pay, unless the defendant objects to the reimbursement amount at the time it is ordered. *Id.* at 254. The panel held, however, that even if the defendant does not object, "the court does need to provide some indication of consideration, such as noting that it reviewed the financial and employment sections of the defendant's presentence investigation report or, even more generally, a statement that it considered the defendant's ability to pay." *Id.* at 254-255.[6]

In my opinion, *Dunbar* misinterpreted Supreme Court precedent when it followed the Fourth Circuit. Nothing in *James*, *Fuller*, or *Bearden* requires a sentencing court to state on the record that it considered the defendant's ability to pay when the defendant did not timely object on indigency grounds to the reimbursement order.

---

[6] The Court of Appeals then held that in deciding the amount that should be reimbursed, the court should consider the defendant's foreseeable ability to pay. *Id.* at 255.

*James* involved a constitutional challenge to a Kansas recoupment statute. Under this statute, when the state provided counsel, the indigent defendant became obligated to repay the amount expended on his behalf. *Id.* at 129-130. If the sum remained unpaid after a designated time, a judgment would be entered against the defendant for the unpaid amount. *Id.* at 130. The indigent defendant was not accorded any of the exemptions that a code of civil procedure accorded to other judgment debtors. *Id.* The Supreme Court held that this provision violated equal protection because it "strips from indigent defendants the array of protective exemptions Kansas has erected for other civil judgment debtors . . . ." *Id.* at 135.

In *Fuller*, the Supreme Court examined the constitutionality of Oregon's recoupment statute. The statute provided that in some cases, defendants may be required to pay the costs of court-appointed counsel, and that the payment of such expenses could be made a condition of probation. *Id.* at 43. It further provided that a defendant could not be required to pay attorney fees if he was financially unable to pay.[7] *Fuller, supra* at 45. Further, a defendant ordered to pay his attorney fees could petition the court for remission of the payment of costs,[8] and a defendant could not be held in contempt for failure to repay if he made a good-faith effort to make the payment.[9] *Id.* at 45-46. The Supreme Court summarized: "a lawyer is provided at the expense of the State to all defendants who are unable, even momentarily, to hire one, and the obligation to repay the State accrues only to those who later acquire the means to do so without hardship." *Id.* at 46. The Court held that Oregon's recoupment statute did not infringe on a defendant's constitutional right to have counsel provided by the State when he is unable because of indigency to hire a lawyer. *Id.* at 51. The Court rejected the defendant's argument that "a defendant's knowledge that he may remain under an obligation to repay the expenses incurred in providing him legal representation might impel him to decline the services of an appointed attorney and thus 'chill' his constitutional right to counsel." *Id.* The Court explained that Oregon's statute in no way deprived any defendant of legal assistance when he needed it. *Id.* at 52-53. The Court emphasized the following points:

> The Oregon statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work "manifest hardship" are forever exempt from any obligation to repay.

* * *

---

[7] This provision is similar to MCL 771.3(6)(a).

[8] This provision is similar to MCL 771.3(6)(b).

[9] This provision is similar to MCL 771.3(8).

Oregon's recoupment statute merely provides that a convicted person who later becomes able to pay for his counsel may be required to do so. Oregon's legislation is tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship. [*Id.* at 53-54.]

In *Bearden*, the Supreme Court addressed whether the Fourteenth Amendment prohibits a state from *revoking* an indigent defendant's probation for failure to pay a fine and restitution. In that case, the trial court revoked the defendant's probation and imprisoned him for failing to pay his fine and restitution without considering his financial ability to pay. *Id.* at 663. The Supreme Court held as follows:

We hold, therefore, that *in revocation proceedings for failure to pay a fine or restitution*, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment. [*Id.* at 672-673 (emphasis added).]

Applying this holding to the facts of the case, the *Bearden* Court concluded that because the trial court had not made any finding that the defendant had not made a bona fide effort to pay the fine and restitution, the case must be remanded for resolution of this issue. *Id.* at 673-674.

In regard to the relevant issue here, Supreme Court precedents compel a sentencing court to inquire into a defendant's financial status and make findings on the record *when the court decides to enforce collection or sanction the defendant for failure to pay the ordered amount*. Our holding in *Music, supra* at 361-362, fully comports with those authorities. The Alaska Supreme Court correctly explained that "*James* and *Fuller* do not require a prior determination of ability to pay in a recoupment system which treats recoupment judgment debtors like other civil judgment debtors . . . ." *State v Albert*, 899 P2d 103, 109 (Alas, 1995). See also the Washington Supreme Court's interpretation of *James*, *Fuller*, and *Bearden*:

> [C]ommon sense dictates that a determination of ability to pay and an inquiry into defendant's finances is not required before a recoupment order may be entered against an indigent defendant as it is nearly impossible to predict ability to pay over a period of 10 years or longer. However, we hold that before enforced collection or any sanction is imposed for nonpayment, there must be an inquiry into ability to pay. [*State v Blank*, 131 Wash 2d 230, 242 (1997).]

Nothing in *James, Fuller*, *Bearden*, or *Music* states that a sentencing court must state on the record that it considered the defendant's ability to pay when the defendant does not timely object on indigency grounds to the order requiring him to pay attorney fees. I would overrule *Dunbar*'s contrary holding.[10]

Applying this conclusion to the facts of this case, I would hold that the court satisfied its duties. It had no responsibility under the federal constitution or our state statute to make a preemptive inquiry into defendant's indigency before imposing attorney fees.

Further, the probation order does not state when payment must commence. The court has not enforced collection by revoking defendant's probation or imposing any other sanction. Therefore, defendant's challenge to the reimbursement order is premature. See *Dunbar, supra* at 256 ("in most cases, challenges to the reimbursement order will be premature if the defendant has not been required to commence repayment"). Therefore, I would reverse the Court of Appeals judgment and remand

---

[10] *Dunbar* cites *People v Grant*, 455 Mich 221, 242, 243 n 30 (1997), for the proposition that the sentencing court must provide some indication that it considered the defendant's ability to pay before ordering payment of attorney fees. But *Grant* does not support this conclusion. The issue in *Grant* was "whether the trial court's failure to make express findings with respect to the statutory factors regarding restitution set forth in . . . MCL 780.767(1), (4) [the Crime Victim's Rights Act] . . . was error that invalidates that portion of the judgment directing restitution." *Grant, supra* at 223. In *Grant, supra* at 224 n 4, this Court explained that under *Music, supra*, a trial court ordering restitution under the Crime Victim's Rights Act, like under MCL 771.3, need *not* make an express determination on the record regarding the defendant's ability to pay, absent a timely objection at the time restitution is imposed. Although the Crime Victim's Rights Act required the trial court "to consider" the defendant's ability to pay, "the statute does not require the trial judge to make a separate factual inquiry and individual findings on the record." *Id.* at 243. Nothing in *Grant* states that the trial court was constitutionally required "to provide some indication of consideration" of the defendant's ability to pay on the record.

this case to the sentencing court to allow defendant to move to remit the payment of attorney fees if he contends that he is unable to pay.  MCL 771.3(6)(b).



I,  Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

February 8, 2008

_____
Clerk

s0205