# Order

Michigan Supreme Court
Lansing, Michigan

June 27, 2008

134841

PEOPLE OF THE STATE OF MICHIGAN,
       Plaintiff-Appellee,

v

DARIN KEITH ROUNSOVILLE,
       Defendant-Appellant.

_____/

SC: 134841
COA: 279235
St Clair CC: 04-000154-FH

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

On order of the Court, the application for leave to appeal the August 16, 2007 order of the Court of Appeals is considered and, pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we VACATE that portion of the sentence of the St. Clair Circuit Court that ordered the defendant to pay attorney fees and we REMAND this case to the trial court for a decision on attorney fees that considers the defendant's ability to pay now and in the future. See *People v Dunbar*, 264 Mich App 240 (2004), lv den 473 Mich 881 (2005). At the trial court's discretion, the decision may be made based on the record without the need for a formal evidentiary hearing. If the court decides to order attorney fees, it shall do so in a separate order which indicates that the court considered the defendant's ability to pay. *Id*. In all other respects, the application for leave to appeal is DENIED, because we are not persuaded that the remaining question presented should be reviewed by this Court.

We do not retain jurisdiction.

CORRIGAN, J., dissents and states as follows:

I dissent from the order remanding this case to the trial court to consider defendant's ability to repay his attorney fees under *People v Dunbar*, 264 Mich App 240 (2004). For the reasons set out in my dissenting statements in *People v Carter*, 480 Mich 1063 (2008), and *People v Willey*, 481 Mich ___ (Docket No. 134368, entered May 23, 2008), neither the Sixth Amendment nor the Fourteenth Amendment compels a sentencing court to state that it considered a defendant's ability to pay before ordering him to repay the cost of his court-appointed attorney when the defendant does not timely object to the repayment order. When the court decides to enforce collection or sanction the defendant for nonpayment, it must consider the defendant's ability to pay. In this case, although the judgment of sentence states that overdue payments are subject to a 20

percent late penalty, the court has not enforced the repayment order or the late penalty. Therefore, the court was not required to state either on the record or in the court file that it had considered defendant's ability to pay. Accordingly, I would deny leave to appeal.

## I. Facts and Procedural Posture

In 2004, defendant pleaded guilty of fourth-degree criminal sexual conduct (CSC IV) and of being a fourth–offense habitual offender, for sexually assaulting his 14-year-old stepdaughter. Defendant was sentenced to one year in jail and two years' probation. The order of probation, which defendant signed, stated, "You must pay attorney fees in an amount to be determined as ordered by the court."[1] In 2006, after serving his jail sentence, defendant violated his probation. He signed a petition for court-appointed counsel, which stated that he understood that he may be ordered to repay the cost of his court-appointed attorney. On November 1, 2006, defendant pleaded guilty of a probation violation and, on December 13, 2006, was sentenced to 3½ to 15 years' imprisonment. Defendant's presentence investigation report (PSIR) listed his employment history, education, vocational training, health status, income, assets, and financial liabilities. At sentencing on the probation violation, the trial court did not state that defendant would be required to reimburse the cost of his appointed counsel. The judgment of sentence, however, ordered defendant to pay $930.05 in attorney fees. The form judgment order stated that fees not paid within 56 days of the December 4, 2006, due date were subject to a 20 percent late penalty on the amount owed. Defendant did not object to this reimbursement order.

On appeal, defendant challenged the reimbursement order for the first time, arguing that the trial court erred in failing to hold a hearing or consider defendant's ability to pay as required by *Dunbar*. The Court of Appeals denied defendant's application for leave to appeal for lack of merit.

## II. Standard of Review

Defendant did not argue at sentencing that the court was required to inquire into his ability to pay before ordering him to reimburse the court for attorney fees. This Court reviews this unpreserved issue for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 774 (1999); *Dunbar, supra* at 251.

## III. Analysis

The Sixth Amendment of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for

---

[1] The order, however, designated "$.00" as the amount of attorney fees to be paid.

his defence." US Const, Am VI.[2] This right is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Gideon v Wainwright*, 372 US 335, 342 (1963). This right requires the states to provide counsel for indigent defendants in criminal cases. *Id.* at 344. Michigan indisputably accorded defendant his Sixth Amendment rights, as he had the benefit of court-appointed counsel.

Under a recoupment scheme, an indigent defendant is provided counsel regardless of his ability to pay, but might be ordered to repay the cost of counsel at a later date. In *James v Strange*, 407 US 128, 134 (1972), the United States Supreme Court, discussing an attorney-fee recoupment scheme requiring defendants to repay the cost of court-appointed counsel, held, "[t]here is certainly no denial of the right to counsel in the strictest sense." Further, in *Fuller v Oregon*, 417 US 40, 51-52 (1974), the United States Supreme Court held that an attorney-fee recoupment scheme did not "chill" the defendants' constitutional right to counsel. "The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel." *Id.* at 53. The Court held that Oregon's recoupment scheme, which was designed to impose an obligation to pay only on those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship, did not violate the Sixth Amendment. *Id.* at 54.

Attorney-fee recoupment schemes have also been challenged under the Equal Protection and Due Process clauses of the Fourteenth Amendment. Due-process and equal-protection principles converge in this area of the law. *Bearden v Georgia*, 461 US 660, 665-666 (1983). In *James v Strange*, 407 US 128 (1972), the United States Supreme Court held that Kansas's recoupment scheme violated the Equal Protection Clause because it did not accord indigent defendants the same statutory protections accorded to other judgment debtors. In *Bearden, supra* at 672-673, the Court held that the Fourteenth Amendment prohibits a state from revoking an indigent defendant's probation for failure to pay a fine or restitution if the defendant has demonstrated bona fide efforts to pay.

When defendant committed this offense, Michigan had no statutory scheme governing court orders requiring criminal defendants to reimburse the costs of court-appointed counsel. See *Dunbar, supra* at 254.[3] Nonetheless, the court had the authority

---

[2] The Michigan Constitution contains a similar provision: "In every criminal prosecution, the accused shall have the right . . . to have the assistance of counsel for his or her defense . . . ." Const 1963, art 1, § 20.

[3] Effective January 1, 2006, the Legislature enacted MCL 769.1k(1)(b)(iii), which allows the court to impose the expense of providing legal assistance on the defendant:

> (1) If a defendant enters a plea of guilty or nolo contendre or if the court determines after a hearing or trial that the defendant is guilty, both of the

to order a criminal defendant to reimburse the government for the cost of court-appointed counsel unless prohibited by statute or the United States or Michigan constitutions. See *Davis v Oakland Circuit Judge*, 383 Mich 717, 720 (1970) (the trial court has the discretionary power to order that a defendant's assets be used to repay the cost of a court-appointed attorney); *People v Nowicki*, 213 Mich App 383, 388 (1995) ("We conclude that the trial court had authority to order defendant to reimburse the county for costs paid for his representation."). In *Dunbar*, our Court of Appeals articulated a test to determine whether a trial court's attorney-fee recoupment procedure is constitutionally sound under this United States Supreme Court precedent. In my dissenting statement in *Willey*, I described the holding in *Dunbar* as follows:

> In *Dunbar, supra* at 252, the issue was whether a sentencing court may constitutionally require a defendant to contribute to the cost of his court-appointed attorney without first assessing his ability to pay. The *Dunbar* panel adopted the test from *Alexander v Johnson*, 742 F2d 117, 124 (CA 4, 1984), to determine whether a sentencing court's procedure passes constitutional muster. In *Alexander*, the Fourth Circuit Court of Appeals discussed *James v Strange*, 407 US 128 (1972), *Fuller v Oregon*, 417 US 40 (1974), and *Bearden v Georgia*, 461 US 660 (1983),[4] which all involved challenges to the constitutionality of statutory attorney-fee recoupment schemes. The Fourth Circuit held that the following constitutional principles emerged from those cases:
>
> "From the Supreme Court's pronouncements in *James, Fuller*, and *Bearden*, five basic features of a constitutionally acceptable attorney's fees reimbursement program emerge. First, the program under all circumstances must guarantee the indigent defendant's fundamental right to counsel without cumbersome procedural obstacles designed to determine whether he is entitled to court-appointed representation. *Second, the state's decision to impose the burden of repayment must not be made without*

---

> following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred pursuant to statute or sentencing is delayed pursuant to statute:
>
> * * *
>
> (b) The court may impose any or all of the following:
>
> * * *
>
> > (iii) The expenses of providing legal assistance to the defendant.

Defendant committed the offenses before MCL 769.1k(1)(b)(iii) went into effect.

[4] See *Carter, supra* at 1068-1070, for a summary of the holdings in *James*, *Fuller*, and *Bearden*.

*providing him notice of the contemplated action and a meaningful opportunity to be heard. Third, the entity deciding whether to require repayment must take cognizance of the individual's resources, the other demands on his own and family's finances, and the hardships he or his family will endure if repayment is required.* The purpose of this inquiry is to assure repayment is not required as long as he remains indigent. Fourth, the defendant accepting court-appointed counsel cannot be exposed to more severe collection practices than the ordinary civil debtor. Fifth, the indigent defendant ordered to repay his attorney's fees as a condition of work-release, parole, or probation cannot be imprisoned for failing to extinguish his debt as long as his default is attributable to his poverty, not his contumacy. [*Alexander, supra* at 124 (emphasis added).]"

After the *Dunbar* panel quoted these factors, it held that a sentencing court may order reimbursement of a court-appointed attorney's fees without specific findings on the record regarding the defendant's ability to pay, unless the defendant objects to the reimbursement amount at the time it is ordered. *Dunbar, supra* at 254. The panel held, however, that even if the defendant does not object, "the court does need to provide some indication of consideration, such as noting that it reviewed the financial and employment sections of the defendant's presentence investigation report or, even more generally, a statement that it considered the defendant's ability to pay." *Id.* at 254-255. [*Willey, supra* (Corrigan, J., dissenting).]

This case, like *Willey*, involves the second and third factors of the *Dunbar* test. First, the trial court satisfied the second *Dunbar* factor; defendant had notice of the fees and an opportunity to object, but failed to do so. When the court appointed counsel for defendant, he signed a form order that stated as follows: "REPAYMENT  I understand that I may be ordered to repay the court for all or part of my attorney and defense costs." In *Dunbar, supra* at 254, the defendant's petition and order appointing counsel similarly stated that he "may be ordered to repay the court" for his court-appointed attorney fees. *Dunbar* held that this petition and order sufficiently notified the defendant of the court's decision to order the payment of attorney fees. *Id.* The petition and order in the instant case, which is virtually identical to the one at issue in *Dunbar*, similarly notified defendant about his responsibility to pay the attorney fees.

Defendant also had an opportunity to object. *Dunbar* held that the defendant, who was given notice of the fees by the petition and order appointing counsel, was given the opportunity to object at sentencing. *Id.* at 254. "In regard to defendant's opportunity to be heard, defendant was not prevented from objecting at sentencing and asserting his indigency." *Id.* Similarly in the instant case, defendant had an opportunity to object at sentencing. The judgment of sentence specifically stated, "Defendant shall pay as follows: $930.05 ATTORNEY FEE . . . ." He could have objected to the fees on the

record at any time. Thus, defendant had notice of the fees and a meaningful opportunity to object to those fees.

As I explained in *Carter* and *Willey*, I think that *Dunbar* misinterpreted Supreme Court precedent when it followed *Alexander* in regard to the third factor necessary for a constitutionally sufficient recoupment scheme. As I explained in my dissent in *Carter, supra* at 1068-1071, nothing in *James, Fuller,* or *Bearden* requires a sentencing court to state on the record or in the court file that it considered a defendant's ability to pay when a defendant has not timely objected on indigency grounds to the reimbursement order:

> . . . Supreme Court precedents compel a sentencing court to inquire into a defendant's financial status and make findings on the record *when the court decides to enforce collection or sanction the defendant for failure to pay the ordered amount.* . . . The Alaska Supreme Court correctly explained that "*James* and *Fuller* do not require a prior determination of ability to pay in a recoupment system which treats recoupment judgment debtors like other civil judgment debtors . . . ." *State v Albert,* 899 P2d 103, 109 (Alas, 1995). See also the Washington Supreme Court's interpretation of *James, Fuller,* and *Bearden*:

> > "[C]ommon sense dictates that a determination of ability to pay and an inquiry into defendant's finances is not required before a recoupment order may be entered against an indigent defendant as it is nearly impossible to predict ability to pay over a period of 10 years or longer. However, we hold that before *enforced collection* or any *sanction is imposed* for nonpayment, there must be an inquiry into ability to pay. [*State v Blank,* 131 Wash 2d 230, 242; 930 P2d 1213 (1997).]" [*Carter, supra* at 1070-1071 (Corrigan, J., dissenting) (emphasis added to *Blank*).]

As I stated previously in *Carter* (Corrigan, J., dissenting), I would overrule *Dunbar*'s contrary holding.

Applying this conclusion to the facts of this case, I would hold that the court satisfied its constitutional duties. First, defendant was not denied his right to counsel. He was provided court-appointed counsel despite his inability to pay for an attorney at the time. He was not required to repay the cost of counsel as a condition of representation. In any case, before ordering reimbursement, the trial court clearly considered defendant's ability to pay, as the PSIR, which was available when the court ordered the reimbursement, described defendant's financial situation.

Second, the federal constitution does not require the court to inquire into a defendant's indigency before imposing the repayment obligation. Although the recoupment order stated that defendant would be subject to a 20 percent late fee on any

outstanding balance, the circuit court has not enforced this provision. The 20 percent late fee arises from MCL 600.4803(1), which provides:

> A person who fails to pay a penalty, fee, or costs[5] in full within 56 days after that amount is due and owing is subject to a late penalty equal to 20% of the amount owed. The court shall inform a person subject to a penalty, fee, or costs that the late penalty will be applied to any amount that continues to be unpaid 56 days after the amount is due and owing. Penalties, fees, and costs are due and owing at the time they are ordered unless the court directs otherwise. The court shall order a specific date on which the penalties, fees, and costs are due and owing. If the court authorizes delayed or installment payments of a penalty, fee, or costs, the court shall inform the person of the date on which, or time schedule under which, the penalty, fee, or costs, or portion of the penalty, fee, or costs, will be due and owing. *A late penalty may be waived by the court upon the request of the person subject to the late penalty*. [Emphasis added.]

As discussed, the trial court is required to consider the defendant's financial situation only when it *enforces* the repayment order by sanctioning the defendant for nonpayment. Including a 20 percent late fee provision in the recoupment order is not the same as actually *enforcing* the late fee. MCL 600.4803(1) specifically contemplates that the trial court retains the discretion to waive the late fee (i.e., decline to enforce it) even when a defendant has failed to pay his attorney fees within 56 days of the due date. In other words, the inclusion of a late-fee provision in the recoupment order is not equivalent to enforcing the recoupment order or the late fee. A sanction is not imposed until the court requires the defendant to pay the attorney fees (with the 20 percent late penalty) or sanctions him in some other way for nonpayment. Because the court has not yet enforced collection by sanctioning defendant for nonpayment, defendant's challenge to the reimbursement order is premature. See *Dunbar, supra* at 256 ("in most cases, challenges to the reimbursement order will be premature if the defendant has not been required to commence repayment"); see also *Blank, supra* at 242. Therefore, the trial court did not err in failing to indicate its consideration of defendant's ability to pay, and the Court of Appeals did not err in denying leave to appeal. For these reasons, I would deny leave to appeal.

---

[5] "Costs" are defined, in part, as "the cost of providing court-ordered legal assistance to the defendant." MCL 600.4801(a).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 27, 2008

_____
Clerk

t0624