# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KENNETH EARL LOURIS,

        Defendant-Appellant.

UNPUBLISHED
October 19, 2017

No. 333123
Oakland Circuit Court
LC No. 2015-257089-FC

---

Before: BORRELLO, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant was convicted in a jury trial of felony murder, MCL 750.316(1)(b), three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, armed robbery, MCL 750.529, and felon in possession of a firearm (felon-in-possession). He was sentenced as a fourth habitual offender, MCL 769.13, to natural life imprisonment for the felony murder conviction, two years imprisonment for each of the three counts of felony-firearm, 40 to 60 years' imprisonment for the armed robbery conviction, and 6 to 30 years' imprisonment for the felon-in-possession conviction. For the reasons set forth in this opinion, we affirm the convictions and sentences of defendant.[1]

## I. BACKGROUND

This appeal arises from the conviction and sentences of defendant arising from the death of William McGee (victim) in December, 2015. On the evening of December 3, 2015, the victim and his friend Jordan Worrall went to the home of Lajazim Alexander in the City of Pontiac. They were joined there by others[2], including a cousin of the victim, Daijon Grandberry, and the victim's brother, Kavonte Manley. Witnesses testified that the men gathered in the basement of the home to gamble, primarily on dice. Of particular importance to this appeal was the

---

[1] We note that at trial defendant did not contest MCL 750.227b or MCL 750.529. Nor did defendant contest that the firearm of which he had possession was the gun that killed the victim, William McGee.

[2] Witness testimony varied as to the exact number of persons present in the basement of Alexander's home on the evening at issue in this case.

conflicting testimony as to whether Worrall was gambling. Grandberry testified that Worrall was shooting dice and gambling whereas Worrall testified that although he had $50, he did not gamble.

Witness testimony revealed that sometime between 11:30 and midnight, defendant came to Alexander's home and went into the basement. Though the exact timeframe was not discernable, shortly after defendant arrived, he stuck what Worrall described as a long-barreled revolver to Worrall's ribs and demanded Worrall's money. According to Worrall, the victim told defendant, to "Leave 'J' alone, Ken." [3] Worrall testified that defendant then told the victim to "Shut the f*** up." Then, defendant struck Worrall on the top of his head with the gun, knocking Worrall unconscious. Worrall does not recall a shot being fired, but according to Grandberry, as soon as defendant hit Worrall with the gun, the gun fired a single shot hitting the victim in the head. Manley could not specifically recall how much time passed between defendant hitting Worrall with the gun and the gun being fired, but he approximated it was 15 to 20 seconds.

After hearing shots, Alexander went to see what was happening in her basement when she heard Manley screaming "…he shot my brother." She looked into the basement and saw defendant with a revolver in his hand and heard him state: "Quit playing with me, n***s. Where the f*** my money at?" She then screamed at defendant to get out of her house which he did, but not before most of the people in the basement had fled. A number of guests then telephoned police who arrived at Alexander's house. The victim was still alive, though he was lying in a large pool of blood having been shot in the head, and Worrall needed over twenty stiches in his head to close up the wound he had suffered as a result of the blow to his head. The victim died approximately five days later from the gunshot wound to the head.

After the close of proofs, defense counsel requested that the trial court instruct the jury on accident, M Crim JI 7.3a and involuntary manslaughter, M Crim JI 7.3. The trial court refused both instructions stating that neither instruction was supported by the evidence. Defendant was thereafter convicted and sentenced as stated above. This appeal then ensued.

## II. INSTRUCTIONAL ERROR

On appeal, defendant argues that the trial court erred when it refused to instruct the jury on accident or involuntary manslaughter. As a result of this refusal, defendant argues that he was denied the right to have a properly instructed jury as well as his constitutional right to present a defense.

This Court reviews de novo claims of instruction error which involve a question of law and we review for abuse of discretion a trial court's ruling that a jury instruction is factually inapplicable. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the permissible range of principled outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2006).

---

[3] Worrall testified that his nickname was "J."

Here, defendant requested that the jury be instructed on accident and manslaughter and the trial court denied his request. An issue is preserved for appellate review when it is raised before and addressed and decided by the trial court. See, *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant's request for an instruction on M Crim JI 7.3 and M Crim JI 7.3a are therefore preserved. However, while defendant references M Crim JI 7.2, which is titled "Murder: Defense of Accident (Not Knowing Consequences of Act)," defendant explicitly acknowledges that only M Crim JI 7.3a was requested in the trial court. Thus, to the extent that defendant contends that the trial court should have instructed the jury on M Crim JI 7.2, that issue is unpreserved. Additionally, defendant did not raise a constitutional argument in the trial court relative to his claim that failure of the trial court to give his requested jury instructions deprived him of a defense. This Court reviews unpreserved issues for plain error. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015), citing *People v Dunbar*, 264 Mich App 240, 251; 690 NW2d 476 (2004), overruled on other grounds by *People v Jackson*, 483 Mich 271, 290; 769 NW2d 630 (2009). To avoid forfeiture under the plain error rule, the defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights. *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015), citing *Carines*, 460 Mich at 763.

"When this Court reviews jury instructions for reversible error, we consider the instructions as a whole." *People v Richardson*, 490 Mich 115; 803 NW2d 302 (2011), citing *People v Kelly*, 423 Mich 261, 270-272; 378 NW2d 365 (1985). " 'A criminal defendant is entitled to have a properly instructed jury consider the evidence against him.' " *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014), quoting *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *Armstrong*, 305 Mich App at 240 (citation and quotation marks omitted).

"The trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *Id.*, citing MCL 768.29, and *Riddle*, 467 Mich at 124. "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). "Even if somewhat imperfect, instructions do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's rights." *People v Bartlett*, 231 Mich App 139, 143-144; 585 NW2d 341 (1998) (citations omitted).

1. INVOLUNTARY MANSLAUGHTER

Defendant argues that the trial court erred when it refused to instruct the jury on involuntary manslaughter. "Manslaughter is a necessarily included lesser offense of murder" and if "a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *People v Gillis*, 474 Mich 105, 137; 712 NW2d 419 (2006) (citations omitted). See also, *People v Mendoza*, 468

-3-

Mich 527, 541; 664 NW2d 685 (2003). "Involuntary manslaughter is the unintentional killing of another, without malice, during the commission of an unlawful act not amounting to a felony and not naturally tending to cause great bodily harm; or during the commission of some lawful act, negligently performed; or in the negligent omission to perform a legal duty." *Mendoza*, 468 Mich at 536. "Every unintentional killing of a human being is involuntary manslaughter if it is neither murder nor voluntary manslaughter nor within the scope of some recognized justification or excuse." *People v Datema*, 448 Mich 585, 594-595; 533 NW2d 272 (1995) (citation and quotation marks omitted).

" '[T]he sole element distinguishing manslaughter and murder is malice[.]' " *Gillis*, 474 Mich at 138, quoting *People v Holtschlag*, 471 Mich 1, 21-22; 684 NW2d 730 (2004). " 'Malice' is defined as an act done 'with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result.' " *Gillis*, 474 Mich at 138, quoting *Mendoza*, 468 Mich at 536. A defendant is "entitled to an involuntary manslaughter instruction only if a rational view of the evidence would have supported a finding" that a victim's death was "caused by an act of 'gross negligence or an intent to injure, and not malice . . . .' " *Gillis*, 474 Mich at 138, quoting *Holtschlag*, 471 Mich at 21-22.

On appeal, defendant advances the theory as he did in the trial court that there was no evidence that defendant intended to harm the victim because there was no evidence that the firearm was intentionally fired. As such, defendant argues, the jury should have received an instruction on involuntary manslaughter because there was no evidence in the record that defendant intended to harm the victim. In support of his argument, defendant primarily relies on the testimony of Grandberry who stated that the gun striking of Worrall was simultaneous with the firing of the fatal shot. Therefore, the only reasonable explanation defendant argues, is that the shooting was an accident. However, there was no evidence presented that could have led to a conclusion that defendant did not act with malice. Worrall testified, as did others, that defendant put a gun to his ribs and demanded his money. Even if we were to find that the witness testimony to robbery should not have been considered, we are still left with the unrefuted evidence that defendant took his gun and struck Worrall on the head, causing a deep gash and a loss of consciousness. Defendant did not argue at trial, nor can he on appeal that *this* act was done without malice. Accordingly, even if we were to disregard the testimony of everyone but Grandberry, we still cannot conclude that there was any evidence that would support a finding of involuntary manslaughter. The axiom: "If the homicide was committed with malice, it is murder," *Holtschlag*, 471 Mich at 21, guides our decision. At the time that the shot was fired defendant was using his loaded weapon to intentionally strike Worrall, suggesting that at a minimum, defendant acted with a willful and wonton disregard of the likelihood that his actions would cause death or great bodily harm. Malice having been defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm," *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998), the record makes clear that defendant, in striking Worrall with a loaded weapon committed "a malum in se unlawful act" at the time that the fatal shot was fired from his weapon. *Holtschlag*, 471 Mich at 22. As a consequence, defendant was not entitled to a jury instruction on involuntary manslaughter. *People v Mills*, 450 Mich 61, 81; 537 NW2d 909, mod 450 Mich 1212; 539 NW2d 504 (1995)

-4-

holding that a trial court is not required to give a requested instruction "where the theory is not supported by the evidence." *Id.*

## 2. ACCIDENT

Relatedly, defendant contends that the trial court erred when it refused to instruct the jury with M Crim JI 7.3a, which is titled "Accident as Defense to Specific Intent Crime." M Crim JI 7.3a provides,

> The defendant says that [he / she] is not guilty of [*state crime*] because [he / she] did not intend to [*state specific intent required*]. The defendant says that [his / her] conduct was accidental. If the defendant did not intend to [*state specific intent required*], [he / she] is not guilty. The prosecutor must prove beyond a reasonable doubt that the defendant intended to [*state specific intent required*].

Additionally, defendant contends on appeal that the trial court should have sua sponte instructed the jury with M Crim JI 7.2, which is titled "Murder: Defense of Accident (Not Knowing Consequences of Act)." M Crim JI 7.2 provides,

> (1) The defendant says that [he / she] is not guilty of _____ because _____'s death was accidental. By this defendant means that [he / she] did not mean to kill or did not realize that what [he / she] did would probably cause a death or cause great bodily harm.

> (2) If the defendant did not mean to kill, or did not realize that what [he / she] did would probably cause a death or cause great bodily harm, then [he / she] is not guilty of murder.

Defendant argued at trial, as he does on appeal, that in the absence of evidence as to the intent behind his actions, the shooting was an accident. It was therefore error, defendant argues, for the trial court to have not so instructed the jury.

In *People v Hess*, 214 Mich App 33, 37; 543 NW2d 332, (1995), this Court defined accident as:

> a fortuitous circumstance, event or happening; an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen or unlooked for event, happening or occurrence; an unusual or unexpected result attending the operation or performance of a usual or necessary act or event; chance or contingency; fortune; mishap; some sudden and unexpected event taking place without expectation, upon the instant, rather than something which continues, progresses or develops; something happening by chance; something unforeseen, unexpected, unusual, extraordinary or phenomenal, taking place not according to the usual course of things or events, out of the range of ordinary calculations; that which exists or occurs abnormally, or an uncommon occurrence. (internal citations omitted).

-5-

For the trial court to have instructed the jury on accident as requested by defendant, there must have been evidence that the defendant acted without an intent to kill or to cause great bodily harm or that he acted without a willful and wanton disregard for the likelihood of the natural tenancy of his behavior to cause death or great bodily harm. *Goecke*, 457 Mich at 466. Initially we note that to the extent defendant argues that an instruction on accident should have been given by the trial court because it was argued by trial counsel, the arguments of counsel do not constitute evidence, and therefore could not be considered when determining whether there exists factual support for the instruction. See, *Mills*, 450 Mich at 82, n15. In order for us to find that an instruction on accident was warranted by the evidence, defendant again directs us to the testimony of Grandberry. Defendant argued at trial as he does on appeal that based on the testimony of Grandberry, when defendant struck Worrall with the loaded pistol, the gun must have "accidentally" fired striking and eventually killing the victim. However, Grandberry's testimony does not demonstrate a lack of malice, as stated above, it supports a contrary finding. Again, even if we were to only consider the evidence put forth by Grandberry, that evidence demonstrated that defendant acted, at a minimum, with a willful and wanton disregard of the likelihood that his actions would cause death or great bodily harm. *Goecke*, 457 Mich at 464. Even if we agree with defendant that the act of striking Worrall's head caused the gun to fire, such conduct is the negation of accident, it is, rather, the definition of malice in that the conduct was, at a minimum, a willful and wanton disregard of the likelihood that the natural tendency of defendant's behavior was likely to cause death or great bodily injury. Accordingly, defendant was not entitled to a jury instruction on accident.

Moreover, defendant has failed to demonstrate how the failure to instruct the jury on accident of involuntary manslaughter undermined the reliability of the jury's verdict. The trial court instructed the jury that to convict defendant of felony murder that defendant had to have "one of these three states of mind: He intended to kill, or he intended to do great bodily harm to [the victim], or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions." Thus, any finding that the victim's death was accidental would have been inconsistent with the jury's conviction of defendant for felony murder. See *People v Hawthorne*, 474 Mich 174, 185; 713 NW2d 724 (2006) (holding that the defendant failed to demonstrate that the trial court's failure to instruct on the accident defense undermined the reliability of the verdict because the jury instructions on the intent element of murder were clear that a finding of accident would be inconsistent with a finding that the defendant possessed the intent requirement for murder).

Defendant also argues that the trial court's refusal to instruct the jury according to his trial counsel's requests deprived defendant of his constitutional right to present a defense. "A defendant has a constitutionally guaranteed right to present a defense, which includes the right to call witnesses." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008), citing US Const, Am VI, and Const 1963, art 1, § 20. However, "this right is not absolute: the accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Yost*, 278 Mich App at 379 (quotation marks and citations omitted).

Defendant relies on our Supreme Court's holding in *People v Richardson*, 409 Mich 126, 141; 293 NW2d 332, 338 (1980), mod *People v Beach*, 429 Mich 450 (1988), superseded by

statute on other grounds as recognized in *People v Smith-Anthony*, 494 Mich 669, 699 (2013), to argue that the trial court's refusal to instruct the jury on his trial counsel's requested instructions foreclosed "the jury's option to convict the defendant in accordance with his own testimony, evidence, and theory." However, defendant's trial counsel was not precluded from arguing that the victim's death was accidental during trial. Review of the record reveals that defendant's trial counsel presented the theory of accident during his closing argument when he stated that "[w]hat happened was the gun went off accidentally and tragically hit [the victim], whose head was turned, in the back of the head. This is not acting in reckless disregard that your action would lead to death or great bodily harm of [the victim]." Therefore, the jury was not deprived of an opportunity to convict defendant with regard to defendant's testimony and the evidence during trial, nor was defendant's trial counsel prevented from presenting defendant's theories to the jury. Thus, defendant was not deprived of his constitutional right to present a defense. See *Hawthorne*, 474 Mich at 184-185.

For the reasons set forth above, defendant is not entitled to relief on his claims of instructional error.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence to support his conviction of felony murder. A challenge to the sufficiency of the evidence is reviewed de novo. *People v Harrison*, 283 Mich App 374, 377-378; 768 NW2d 98 (2009), citing *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). The evidence must be viewed "in the light most favorable to the prosecution in order to determine whether a rational trier of fact could have found that the prosecution proved the elements of the crime beyond a reasonable doubt." *People v Levigne*, 297 Mich App 278, 281-282; 823 NW2d 429 (2012), citing *People v Petrella*, 424 Mich 221, 268-269; 380 NW2d 11 (1985). It is the role of the trier of fact to determine the weight of the evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), citing *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005), citing *Carines*, 460 Mich at 757. Minimal circumstantial evidence is sufficient to prove a defendant's state of mind. *Kanaan*, 278 Mich App at 594.

"The elements of felony murder are (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b)." *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009), citing *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007), and *Carines*, 460 Mich at 758-759. Defendant's charge of felony murder was based on the alleged uncharged predicate felony of larceny, which is specifically enumerated in MCL 750.316(1)(b).

On appeal, defendant argues that the prosecution failed to produce any evidence at trial that defendant intended to harm the victim, or that defendant had an intent to kill. Consequently, defendant argues, the prosecution failed to prove the requisite malice element by failing to prove

that the shooting was intentional. As discussed, " '[m]alice' is defined as an act done 'with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result.' " *Gillis*, 474 Mich at 138, quoting *Mendoza*, 468 Mich at 536.

Viewing the evidence in the light most favorable to the prosecution, the evidence revealed that defendant stuck a gun in the ribs of Worrall and demanded that Worrall give defendant his money. When the victim saw this he told defendant to leave Worrall alone. Defendant then took his gun and hit Worrall over the head with such force that it split his head and caused him to lose consciousness. Depending on whose testimony was to be believed, defendant then shot the victim either almost simultaneous to the attempted robbery or about 15 seconds after striking Worrall with his gun. Whomever the jury chose to believe as to the passage of time between the blow to Worrall's head and the fatal discharge of the gun, there was legally sufficient evidence from which the jury could have found that defendant shot the victim because he interfered with his robbery of Worrall. If the jury believed the testimony of Manley, that there was at least a 15 second delay between striking Worrall and shooting the victim, the jury could reasonably conclude that defendant had the requisite time to have intentionally shot the victim. Bearing in mind that minimal circumstantial evidence is sufficient to prove a defendant's state of mind, defendant's conduct revealed by the witnesses who testified at trial, provided legally sufficient evidence from which a rational trier of fact could have inferred that defendant intentionally shot the victim. *Kanaan*, 278 Mich App at 594. Additionally, the jury could also have inferred defendant acted with malice because the act of using a loaded gun as a blunt weapon, and the act of committing an armed robbery both evince an intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm was the result. *Goecke*, 457 Mich at 466. Accordingly, defendant is not entitled to relief on his claim that there was insufficient evidence to support his convictions.

## IV. GREAT WEIGHT OF THE EVIDENCE

Defendant additionally argues on appeal that the jury's verdict was against the great weight of the evidence. Generally, a defendant must raise an argument that a jury's verdict was against the great weight of the evidence in a motion for a new trial to preserve that issue for appellate review. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014), citing *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). Defendant did not move for a new trial, therefore, this issue is unpreserved.

Unpreserved claims that a jury's verdict was against the great weight of the evidence are reviewed for plain error. *Musser*, 259 Mich App at 218, citing *Carines*, 460 Mich at 763-764. To avoid forfeiture under the plain error rule, the defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights. *Buie*, 285 Mich App at 407, citing *Carines*, 460 Mich at 763.

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Musser*, 259 Mich App at 218-219, citing *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). "[A]bsent exceptional circumstances, issues of witness credibility are for the jury[.]" *People v Lemmon*, 456 Mich 625, 642; 576

NW2d 129 (1998). "[W]hen testimony is in direct conflict and testimony supporting the verdict has been impeached, if it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it, the credibility of witnesses is for the jury." *Lemmon*, 456 Mich at 643 (citation and quotation marks omitted).

" 'To support a new trial, the witness testimony must 'contradict[ ] indisputable physical facts or laws,' be 'patently incredible or def[y] physical realities,' be 'so inherently implausible that it could not be believed by a reasonable juror,' or have been 'seriously impeached' in a case that was 'marked by uncertainties and discrepancies.' " *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015), application held in abeyance, 872 NW2d 492 (Mich 2015), quoting *People v Galloway*, 307 Mich App 151, 167; 858 NW2d 520, 529 (2014), rev'd in part on other grounds 498 Mich 902 (2015) (alterations in original). "The hurdle that a judge must clear in order to overrule a jury and grant a new trial is unquestionably among the highest in our law." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008) (quotation marks and citation omitted).

The Michigan Supreme Court has observed, "[c]riminal cases are usually fought on the battlefield of witness credibility[.]" *Lemmon*, 456 Mich at 643 n 22 (citations omitted). "The credibility of a witness is determined by more than words and includes tonal quality, volume, speech patterns, and demeanor, all giving clues to the factfinder regarding whether a witness is telling the truth." *Id*. at 625, citing *State v Turner*, 186 Wis 2d 277, 285; 521 NW2d 148 (1994).

Defendant contends that the jury's verdict was against the great weight of the evidence for two reasons: (1) the testimony that defendant chose to rob Worrall as opposed to just grabbing the money lying on the floor "makes no sense," and (2) Worrall, Grandberry, and Manley were not credible witnesses because they were all either related to or friends with the victim, and thus, had motivation to cast defendant in the worst light possible.

During trial, Worrall confirmed that, while the gambling was ongoing, "there was a lot of money on the floor." Manley confirmed that "there was a considerable amount of money being gambled that night" in the house's basement, and that the gamblers placed their wagers on the basement's floor. Based on that testimony, defendant argues that it "makes no sense" ("Simply put, why would Mr. Louris rob where no money was?") that defendant would choose to rob Worrall, who was the youngest gambler in attendance that evening, as opposed to the other gamblers that were present by simply grabbing their money which was lying on the floor. Defendant does not explain why the testimony that defendant chose to rob the youngest person in a room full of gamblers was so inherently implausible that it could not have been believed by a rational jury. *Bosca*, 310 Mich App at 13. Here, defendant seems to argue that the jury was required to make "sense" of defendant's actions. There is of course, no such requirement. Rather the jury was required to determine if there was legally sufficient evidence which, if believed, would prove defendant's guilt beyond a reasonable doubt. Evidence revealed that defendant hit Worrall in the head with a gun when he would not give up his money and that Alexander heard defendant ask: "Where the f*** the money at?" Thus, contrary to defendant's arguments, evidence presented at trial supported the jury's verdict that defendant was guilty of armed robbery.

Defendant also argues that Worrall, Grandberry, and Manley were not credible witnesses because they were all either related to or friends with McGee, and thus, had motivation to cast defendant in the worst light possible. There is no dispute that Grandberry and Manley were related to McGee. Nor is there any dispute that Worrall was McGee's friend, and that defendant struck Worrall on the head with a gun, which resulted in Worrall losing consciousness and a wound that required 24 to 26 stitches. Yet, it was the responsibility of the factfinder during trial, the jury, to evaluate the credibility of these witnesses in light of those facts. Defendant has not explained how the testimony of those witnesses was impeached in such a way to render their testimony bereft of all probative value, and thus, there is no reason to believe that the jury improperly considered the credibility of Worrall, Grandberry, and Manley. *Lemmon*, 456 Mich at 642. Thus, defendant is not entitled to relief on the grounds that the verdicts were against the great weight of the evidence.

Affirmed.


/s/ Stephen L. Borrello
/s/ William B. Murphy
/s/ Amy Ronayne Krause